JOHN W. BASS, JOSEPH GAFFORD, AND ROBERT B. FOOTE, Respondents, *v.* AUSTIN WALSH, Appellant.

*Contract—Sale—Statute of Frauds—Delivery.*—At common law, where a proposition to sell goods is accepted by the buyer, and the goods are in the possession of the seller, and they are separate from other goods, and require nothing further to identify them and prepare them for delivery, the sale is complete and the title to the goods passes to the purchaser; but by the provisions of the statute of frauds the contract must be shown by a memorandum in writing signed by the party to be charged, or there must be a delivery and acceptance of part of the goods. B. sold to W. 223 bales of hay lying by themselves on the levee at St. Louis, at the price of $33 per ton, and gave to W. a ticket describing the number of bales and the price at which the hay was sold, the ticket authorizing the purchaser to take the hay as soon as it could be weighed; — W. requested that the hay should not be weighed on that day, to which B. assented on condition that the hay should be at W.'s risk; *held*, that the jury was warranted in finding that the hay had been delivered, and that W. was responsible for the price although the hay was burned upon the levee before weighing.

### *Appeal from St. Louis Circuit Court.*

Plaintiffs' instructions given :

1. If it appear from the evidence that plaintiffs by their agent Hawley agreed to sell and that the defendant agreed to buy the 223 bales of hay at the price and sum of $33 per ton ; that Hawley thereupon handed defendant a ticket showing the number of bales of hay and where the same was, and that by the custom of merchants said ticket would authorize the hay to be delivered to defendant as soon as the same was weighed, and that defendant thereupon stated that he did not want it weighed on that day; that plaintiff assented thereto upon condition that said hay should be at the charge of defendant, to which condition defendant assented,—then plaintiffs are entitled to recover of the defendant the price agreed on.

2. If the court finds that the plaintiffs by their agent sold the hay in question to the defendant at $33 per ton, and at the time delivered to him a sale ticket as described in evidence, that by custom said sale ticket authorized defendant

Bass et als. v. Walsh.

to receive the hay and place the same under his control, then there was a valid sale and delivery of the hay.

3. If it appear from the evidence in this case that by the contract between the parties the hay was to be weighed merely for the purpose of ascertaining how much money defendant was to pay at $33 per ton, the price having been agreed upon; that the hay was at the levee, at the time of such contract of sale, separate from any other hay; that it was not in the actual possession of some third party, nor in the actual possession of any one; that a ticket or other badge of authority to receive or take the hay, either before or after the hay should be weighed, was given by plaintiffs' agent to the defendant,—then the sale and purchase is complete, and the defendant is liable for the value of the hay at the contract price.

Defendant's instructions refused:

1. If the court believes from the evidence that plaintiffs agreed to sell and that defendant agreed to buy the bales of hay at the price named in the petition, and that plaintiffs thereupon handed to defendant a ticket showing the number of bales of hay and where the same lay, and that by the custom of merchants said ticket would authorize the hay to be delivered to defendant as soon as the same was weighed, and that defendant thereupon stated that he did not want it weighed on that day, and that plaintiffs assented thereto upon condition that said hay should be at the charge of defendant, to which condition the defendant assented,—the court will find for the defendant, unless the court should further believe from the evidence that defendant expressly waived any right to object to the quality or quantity of the goods, and that the wharfinger agreed to hold the same for the defendant.

2. Unless defendant actually accepted the hay described in plaintiffs' petition, the sale was void under the statute of frauds; and there was no actual acceptance on the part of the defendant if he still retained the right to object to the quantity or quality of the hay.

3. If the court believes from the evidence that defendant received from plaintiff a memorandum in writing which amounted to an order on the wharfinger or carrier to deliver the goods in question to the defendant or his order, yet the court declares the law to be that this was no delivery of the goods to the defendant so as to take the case out of the statute of frauds unless the wharfinger or carrier attorned to defendant and agreed to hold the goods for him.

4. The court declares the law to be that, in order to the validity of the contract of sale sought to be maintained in this suit, it is necessary that defendant should accept part of the goods so sold and actually receive the same; and although it may appear from the evidence, that, by the custom of merchants of this place, the delivery of a sale ticket such as is described in the evidence, when coupled with the request of the purchaser that the goods might not be weighed till next day, and in the meantime they should be at the charge of the purchaser, was equivalent to and operated as a delivery; yet, unless there was some further acceptance on the part of the purchaser, such custom does not fill the requirements of the law and is illegal.

*Bakewell & Farish*, for appellant.

I. The statute of frauds must be strictly construed, and some meaning must be given to the words "actually received the same." The statute does not say merely that the buyer shall accept the goods; it says that he shall "accept" them, that he shall "receive" them, and that he shall "actually receive" them.

II. The constructive delivery will not do; there must be an actual delivery.

III. The mere actual delivery will not do; there must be a receipt.

IV. The mere constructive receipt will not do; there must be actual delivery and actual receipt.

V. The mere actual delivery and actual receipt will not do; there must be actual acceptance.

Bass et als. v. Walsh.

VI. There is no actual receipt so long as the buyer can object to quantity or quality; consequently, where the buyer has yet to see the goods to determine the quality and condition, and they are yet to be weighed to determine their quantity (as was here the case), it is nonsense to talk of a receipt.

The inclination of courts is to give the words of the statute full effect—Smith's Merc. L., 571-8, Am. ed., and cases cited; Add. on Cont. 70 ; Sto. on Sales, 276-9. That this particular memorandum was no sufficient delivery—Ives v. Pollax, 14 How. Pr. 411 ; Burtall v. Burn, 5 Dowl. & Ryl. 284 ; Baldy v. Parker, 2 Barn. & Cress. 35 ; Farina v. Horne, 16 Mees. & W. 122 ; Bentall v. Burr, 3 Barn. & Cress. 426 ; Stoyd et al. v. Wright, 25 Geo. 215 ; S. C. 20 Geo. 577 ; Shindler v. Houston, 1 Comst. 261 ; Gillman v. Hill, 36 N. H. 320 ; Shepherd v. Tracy, 32 N. H. 56.

The instructions asked by defendant and refused by the court are most fully borne out by the text books cited, and by these cases, selected amongst multitudes all looking the same way. Cunningham v. Ashbrook, 20 Mo. 552, is not a case in point; in that case there was an actual delivery of the hogs, and the vendees had slaughtered them : and in Glasgow v. Nicholson, 30 Mo. 29, there had been a delivery and acceptance of four fifths of a lot of goods bought under one contract.

*Sharp & Broadhead,* for respondents.

There is only one point in this case, and that is whether there was a delivery to and acceptance of the hay by the defendant below, within the provisions of the statute of frauds. There is no necessity of a manual delivery of an article so ponderous and bulky as a bale of hay. The law does not require an actual delivery, but only that the article be placed in the power of the purchaser, or that his authority as owner be recognized by some formal act of the seller. The delivery of a receipt ticket, sale note, or other evidence of title to goods, is a sufficient delivery—Glasgow et als. v. Nicholson, 25 Mo. 30. After delivery the property is at the risk of the

buyer—Id. 31. That case was almost precisely similar in its details to the case before the court. There was no actual delivery of the sugar in that case; it was sold on the levee by sample; the sugar was weighed by the city weigher; but when the defendant sent a dray for the sugar, one of the hogsheads was missing: the court held that the lost hogshead was at the risk of the purchaser. In the case before the court the hay was not weighed, but this was by express direction of the buyer, to which the seller assented.

The rule in such cases, as established by the adjudications, is that "the party affirming the sale must satisfy the jury that the delivery, whether actual or symbolical, was intended to be an absolute transfer, and all that remained to be done was merely for the purpose of ascertaining the price of the articles sold at the sale agreed upon."—Riddle v. Varnum, 20 Pick. 283–4; Cunningham v. Ashbrook, 20 Mo. 562.

There may be an actual delivery without an acceptance, because, from the character of the article delivered, or from the fact that it is to be separated from other articles, the purchaser may have the right to object and return the article on account of defect in quantity or quality. But this cannot well happen in the case of a symbolical delivery; there the delivery implies an acceptance, because the purchaser takes the symbol as vesting him with an authority to receive and to exercise complete ownership over the property. In the case before the court the weighing was evidently only intended to ascertain the amount of money to be paid, not to separate it from any other property of the same kind.

After all, the act done by the parties at the time of the agreement to purchase, whether it be an actual delivery and acceptance, or something done as a symbol of such delivery and acceptance, is to go to the jury, or to the court sitting as a jury; and the jury or the court, in the one case or the other, is to determine with what intention the act was done. —Judge Leonard's opinion in case of Cunningham v. Ashbrook, 20 Mo. 559.

WAGNER, Judge, delivered the opinion of the court.

This was a suit brought by the respondents against the appellant to recover the value of two hundred and twenty-three bales of hay, alleged to have been sold to the appellant at the price of thirty-three dollars per ton. The record shows that the hay had just been taken from the steamboat Sucker State, and was placed on the wharf in the city of St. Louis, and was consigned to the care of one Hawley, a commission merchant; that appellant agreed to purchase the hay at the price of thirty-three dollars per ton, which agreement Hawley acceded to, and immediately delivered to him a card, with the following writing; "Two hundred and twenty-three bales of hay, tight-pressed, at Sucker State," signed "Hawley." Appellant said he might not want the hay weighed until next morning, to which Hawley assented, but told him that in the meantime the hay should be at his charge or expense; the appellant then told Hawley to have the hay covered with tarpaulins and he would pay for it, which was accordingly done. The next day, after the alleged sale or agreement, was wet and drizzly, and the hay was not weighed, and on the day after the hay was destroyed by fire. There was testimony introduced tending to show that by the custom of the merchants at St. Louis, the delivery of the sale ticket authorized the purchaser to take possession of the hay, and also tending to show that it only authorized the purchaser to take possession when it was weighed. The main defence relied upon by the appellant is, that the sale was incomplete, and that there was no delivery, acceptance or receipt within the meaning of the sixth section of the statute of frauds.

At common law when the seller made a proposition and the buyer accepted it, and the goods were in the possession and control of the seller, and they were separated, and required nothing further to be done to prepare them for delivery or to identify them, the sale was complete and perfect, and the title to the goods passed at once; the buyer acquired a complete title, an absolute *jus in re*, and not merely a *jus ad rem*. But the statute of fraud has changed the principle

of the common law, and interposed a new rule of evidence in regard to sales of personal property. The question as to what constitutes a sufficient delivery under the statute, and what constitutes an acceptance, is often difficult and perplexing, and any attempt towards reconciling the conflicting decisions on the subject would be wholly unavailing. Whilst some courts have been disposed to give the statute a strict construction and declare all sales void which were not made in strict accordance with it, others have interpreted it so loosely, and evaded its provisions on such slight pretext, as to amount almost to a judicial repeal of the statute.

In doubtful cases, the question must be one of fact rather than of law. It is always a question of fact for the jury whether the goods were delivered and accepted; but they must act under the direction and instruction of the court, and thus it will become a question mixed of both law and fact. It is held in New York that to constitute a delivery and acceptance of goods, such as the statute requires, something more than mere words is necessary. In addition to the language of the contract, there must be some act of the parties operating as a transfer of the possession and an acceptance by the buyer—Steindler v. Houston, 1 Comst. 261, overruling S. C. 1 Denio, 48; Archer v. Zele, 5 Hill, 205 ; Ely v. Ormsby, 12 Barb. 570. In Massachusetts a like doctrine has been recognized—Dale v. Simpson, 21 Pick. 384.

When upon a verbal sale of chattels anything remains to be done, between the vendor and vendee, before the goods are to be delivered, as separating the specific quantity sold from a large mass, or identifying chattels which are mixed with others, a present right of property does not attach in the vendee. But in Macomber v. Parker, 13 Pick. 183, the court lays down the doctrine in the following manner: "The general principle is, that when any operation of weight, measurement, counting, or the like, remains to be performed in order to ascertain the price, the quantity or the particular commodity to be delivered, and to put it in a deliverable state, the contract is incomplete until such operation is per-

formed. But when the goods or commodities are actually delivered, that shows the intent of the parties to complete the sale by the delivery; and weighing, measuring or counting afterwards could not be considered as any part of the contract of sale, but would be taken to refer to the adjustment of the final settlement as to the price."

Actual or manual delivery is often impracticable, as in the case of ponderous or bulky articles, and in such a case the law does not require what would be inconvenient if not impossible; and if the goods sold be placed in the power of the purchaser, or his authority as owner be acknowledged by some formal act or declaration of the seller, it will amount to a sufficient delivery and acceptance—Glasgow v. Nicholson, 25 Mo. 29; Leonard et al. v. Davis et al., 1 Black. (U. S.) 476.

In Glasgow v. Nicholson the plaintiffs were the owners of ten hogsheads of sugar, which were, on the last day of November, 1854, lying on the wharf of the city of St. Louis. The defendant purchased five of the hogsheads, by sample, at their store, and requested them to have the sugar weighed early next morning. The next morning the hogsheads were weighed by a city weigher, a certificate of weight and a bill of the price were delivered to the clerks of the defendant at defendant's store, the five hogsheads being still on the wharf, one of whom stated he would attend to it. On the second day of December following the defendant sent his dray for the sugar, but only four hogsheads could be found, which four he hauled away and paid for, but refused to pay for the fifth.

This court held that it was a good delivery for the five hogsheads, and Judge Scott said "that as the sugar was sold on the wharf, that would be the place of delivery. Nothing more appearing, we do not see that more could have been done than was done by the plaintiffs to effect a delivery, and that with the consent of the defendants. The facts proved are as significant of a symbolical delivery as those mentioned in the instances above, and it is clearly shown in the evi-

dence that the means employed were those usually practised in effecting the delivery of goods sold on the wharf in the city of St. Louis. After a delivery was accomplished, the sugar would be at the risk of the buyer, and if through his inattention or neglect it was lost, he cannot be relieved from the payment of the price of it."

Where the plaintiff sold a horse to the defendant by verbal agreement, and the bargain was for immediate delivery, but plaintiff requested the defendant to lend the horse to him, and by defendant's consent plaintiff kept the horse; afterwards defendant refused to take the horse on the ground that there was no delivery and acceptance, and pleaded the statute of frauds. The jury, on the question being put to them, found that the bargain was complete before the arrangement as to the loan took place. And it was held by the court of Queen's Bench that there was an acceptance of the horse by the defendant within the exception of the statute of frauds—Marion v. Wallis, 6 Ellis & Bl. 726.

In Chaplin v. Rogers, 1 East, 192, it was held that, when the facts and intentions of the parties are ascertained, it is for the court to decide whether by law they constitute an acceptance; but if they are disputed, it is a question for the jury whether there has been a delivery and acceptance in point of fact, and their finding that there was an acceptance puts an end to the question of law.

The question was discussed with much learning and ability by Judge Leonard in the case of Cunningham v. Ashbrook, 20 Mo. 533, and the conclusion arrived at was that to constitute a delivery within the meaning of the statute of frauds there must be both a change of the actual and civil possession, and whether such sale took place was a question for the jury; and that the principle that in a sale of goods no title passes while any act such as counting, weighing, or measuring remains to be done by the seller, is only applicable when such act is necessary to separate the goods from a larger mass, and does not apply to the sale upon fixed terms by weight to be subsequently ascertained of goods already separated, in

which cases title passes by delivery, and as a consequence the loss by destruction of the goods after they are delivered and before they are weighed will fall upon the buyer. The bales of hay here were separated and identified. They were lying on the wharf by themselves, not mixed with any other commodities. Weighing was all that was necessary, and that was only essential to enable the parties to determine the price when they made their settlement. Nothing more, then, as respected the hay was required of the sellers; and if upon the agreement the respondents relinquished all control over it, and the appellant by his acts and declarations assumed the ownership, the sale, delivery and acceptance was complete and amounted to a transference of the title to the property. And whether the passing of the sale note was symbolical of a delivery, or whether the buyer's request that it should not be weighed until the next morning, his agreeing to pay the charges and expenses from the time of the sale, and employing Hawley to see that it was properly covered on his account, amounted to an acceptance and receipt, were all matters of fact to be found by the verdict of the jury.

The court, sitting as a jury, upon proper declarations of law, found in the affirmative, and we do not deem ourselves authorized to disturb the verdict.

Judgment affirmed; the other judges concurring.

