Ober, et al. v. Carson's Ex'r.

———o———

ROBERT P. OBER, *et al.*, Respondents, *vs.* JOHN B. CARSON'S EXECUTOR, Appellant.

1. *Practice, civil—Admission of testimony, order of.*—The order for the admission of testimony is a matter resting very much in the discretion of the court. Evidence, inadmissible at the time without further proof, may be given if such other proof is afterwards supplied ; if not, the evidence should be ruled out.

2. *Sale—What acts necessary to complete intention of parties—What should be shown.*—Where anything remains to be done between the seller and the purchaser, before the goods are to be delivered, as separating the specific quantity sold from a large mass, or identifying them when mixed with others, a present right of property does not vest in the purchaser. But when a mere operation of weight, measurement, counting, or the like, remains to be performed after the goods are actually delivered, and it is shown that it was the intention of the parties to complete the sale by delivery, such weighing, measur-

14—VOL. LXII.

| 62 | 209 |
| 97 | 251 |

| 62 | 209 |
| 34a | 206 |

| 62 | 209 |
| 37a | 393 |

| 62 | 209 |
| 103 | 239 |

| 62 | 209 |
| 46a | 595 |
| 47a | 98 |

| 62 | 209 |
| 49a | 31 |

| 62 | 209 |
| 58a | 474 |

| 62 | 209 |
| 43a | 271 |

| 62 | 209 |
| 69a | 449 |

| 62 | 209 |
| 71a | 108 |

| 62 | 209 |
| 91a | 567 |
| 91a | 568 |

| 62 | 209 |
| 174 | ³185 |

ing or counting will not be regarded as a part of the contract of sale, but will be considered as referring to the adjustment on a final settlement. In such case it is to be ascertained whether the acts and negotiations of the contracting parties show the intention of the seller to relinquish all further claim as owner, and that of the buyer to assume such control with all liabilities.

3. *Custom—What essential to constitute, when will control—Cannot change the law.*—A custom, in order to control, must be certain, settled and uniform, and not of·a character such as to alter the rights and liabilities of parties as fixed by law. Custom cannot change or do away with the requirements of law touching the delivery of personal property.

4. *Cotton, tax on—Act of congress touching liens, permits· for delivery of bales, etc.—Transfer of title and possession subject to.*—The act of congress of July 1st, 1862, and the regulations of the treasury department made pursuant thereto, under which the tax on cotton became a lien, and the collector was instructed to mark the bales on which the tax was paid, and then issue permits for their removal, did not prevent a transfer from one owner to another, before the tax was paid. They might notwithstanding contract, subject to such regulations, for a change of ownership and possession of the property.

### *Appeal from St. Louis Circuit Court.*

*S. Knox,* for Appellant, cited Kirby vs. Johnson, 22 Mo., 354; Shindley vs. Houston, 1 Conn., 261; Cunningham vs. Ashbrook, 20 Mo., 553; Jones et al. vs. Pearce, 25 Ark., 545; Hanson vs. Meyer, 6 East., 614; Cook vs. Hill, 5 Lansing [N. Y.], 243; Marsh vs. Rowe, 44 N. Y., 643; Cross vs. O'Donald, 51 N. Y., 211; Sto. Sales, §296; Cobb vs. Haskell, 14 Me., 303.

*Glover & Shepley,* for Respondents, cited Bass vs. Walsh, 39 Mo., 192; Blow vs. Spear, 43 Mo., 496; Cunningham vs. Ashbrook, 20 Mo., 556; 2 Kent Com., 500–2; 2 Greenl. Ev., §§ 250, 251; S. W. F., etc. Co. vs. Stanard, 44 Mo., 71; U. S. Stat. at Large, pp. 465, 466, § 12.

WAGNER, Judge, delivered the opinion of the court.

This was a suit for the value of thirty-four bales of cotton, which, it was alleged, were sold by plaintiffs in 1862 to John B. Carson, now deceased. The plaintiffs' testimony tended to prove that they sold to James O. Carson, acting for and on behalf of John B. Carson, one hundred and one bales of cotton, at a certain price per pound; that in the afternoon of

the day of the sale a boat arrived bringing thirty-six more bales of cotton for plaintiffs, and that this lot was sold to defendant also on the same terms on which he purchased the previous cotton ; that the defendant, acting through James O. Carson, went and examined the cotton and rejected two bales, and they were rolled off to one side, and the remainder accepted ; that plaintiffs directed the weighers to deliver the cotton to Carson, and told Carson to haul it off, and he would deliver to him the tax receipt; that Carson was then hauling off the one hundred and one bales, the weights to which had not yet been made out, nor the taxes paid; that before the weights had been made out or the tax bills paid, a fire occurred, which consumed eleven of the thirty-six bales, and Carson refused to pay for the thirty-four bales.

Defendant introduced testimony of a contrary character, tending to show that there had been no delivery or acceptance of the last lot of cotton.

When the deposition of one of the plaintiffs' witnesses was offered in evidence, detailing the terms of the sale and acceptance of the cotton, it was objected to on the ground, that the defendant was dead, and before it was admissible against him, it would be necessary to show that the contract was made with some person still living. The objection was overruled and the deposition received. The trial was before the court sitting as a jury, and for the plaintiff a declaration was given, that if it was found from the evidence, that in October, 1862, there were lying on the levee in the city of St. Louis thirty-six bales of cotton at one place, identified by specific marks, and being a separate lot of cotton in possession of the plaintiffs, and the plaintiffs sold the same to defendant for the price of 56 cents a pound, or any other price, and the defendant then and there bargained for the same at such price and no stipulation was then and there made by the parties, delaying the taking of possession of said cotton by defendant, and that after said sale the defendant by self or agent went and looked at said cotton, having previously received from the plaintiffs samples thereof, and after looking at said cotton,

defendant, by self or agent, rejected one, two or three bales of the lot, and accepted the balance, and the rejected bales were then and there rolled away from the lot accepted, and afterwards the defendant, by self or agent, called said lot his own, and treated it as his own, by taking possession of it, and attempting to save it from the fire, the court should find for the plaintiff.

For the defendant, the court declared the law : 1st. Unless it was satisfied by the evidence, that the contract in issue was originally made with James O. Carson, the testimony of the witness Ober, to anything said or done in the lifetime of John B. Carson, was incompetent. 2d. Unless it was found from the evidence that there was a sale and delivery of the cotton in question by the plaintiffs to the defendant, the plaintiffs were not entitled to recover; that to constitute delivery in the case, it was incumbent on the plaintiffs to prove affirmatively that they delivered the cotton in controversy to the defendant, for the purpose of passing the title thereto to him, and that he received or accepted the same, with the view or for the purpose of making it his own. 3d. That in order to constitute a valid sale and delivery of goods, the vendor must have done everything which it was incumbent on him to do, he must have intended to part with the possession of them and have actually parted with the possession, and the vendee must have received the same with the intention and for the purpose of holding the same as owner. 4th. If it was found from the evidence that a sample of the cotton was shown by the plaintiff to the defendant, and that defendant bargained for the cotton if the same should be according to sample, such bargain vested no title to said cotton in the defendant until he had the opportunity to inspect said cotton and compare the same with the sample. 5th. Unless it was found from the evidence that there was a sale and delivery of the property in question by the plaintiffs to the defendant, the plaintiffs could not recover. Defendant asked eight additional declarations, which the court refused.

In reference to the first objection, that, as J. B. Carson was dead, the deposition in relation to the contract was inadmissible till it was first shown by other evidence that the contract sued on was originally made with a person living and competent to testify, it is only necessary to say, that the order in which testimony is admitted is a matter resting very much in the discretion of the court. It is true it was incumbent on the plaintiffs to furnish that proof, and they subsequently did so. It frequently happens that evidence, which at one stage of the case is inadmissible in consequence of a requirement that it should be accompanied by preliminary proofs, is permitted to be given, the party offering it undertaking at the same time to afterwards supply the missing testimony. If it is not supplied, then, of course, the evidence is ruled out. This practice is often found convenient, and is of every day occurrence. The evidence subsequently showed that the contract, if any was made, was entered into with a person who was living, and was competent to testify, and who did testify, and the point therefore is immaterial and cannot be sustained. There was an instruction on the question given at the request of the defendant, and from the finding it is evident that the court considered the evidence ample outside of the deposition to establish the fact.

The instructions given, we think, fairly presented the law. The cotton was separate and distinct from all other lots, and was capable of being transferred without anything more being done. Where anything remains to be done between the seller and purchaser, before the goods are to be delivered, as separating the specific quantity sold from a larger mass, or identifying them when they are mixed with others, a present right of property does not attach in the purchaser. But when a mere operation of weight, measurement, counting, or the like, remains to be performed after the goods are actually delivered, and it is shown that it was the intention of the parties to complete the sale by delivery, such weighing, measuring or counting afterwards will not be regarded as a part of the contract of sale, but will be considered as referring to

adjustment on a final settlement. The question of transfer to, and vesting title in, the purchaser, always involves an inquiry into the intention of the contracting parties; and it is to be ascertained whether their negotiations and acts show an intention on the part of the seller to relinquish all further claim as owner, and on the part of the buyer to assume such control with all liabilities. (Cunningham vs. Ashbrook, 20 Mo., 533; Glasgow vs. Nicholson, 25 Mo., 29; Bass vs. Walsh, 39 Mo., 192; Williams vs. Evans, Id., 201.) This is essentially the view announced by the instructions, and we think they are entirely unexceptionable. The declarations being correct, the question as to whether there was a sale, delivery and acceptance, and the intention of the contracting parties, was to be determined by the tribunal trying the fact, and the verdict is not reviewable here.

A witness testified, for the defense, as to the custom of delivering cotton at that period; that when it was purchased by sample it was afterwards re-sampled; that the seller then had it weighed, and would take the certificates of weight to the collectors and pay the tax on the cotton, and get a permit to remove the same. The seller then furnished to the buyer the weigher's certificates, tax receipts, and the permit, and these were considered a delivery of the cotton. There is no difficulty in arriving at the conclusion that the court committed no error in refusing defendant's instruction on this subject. In the first place, the practice of taxing cotton and issuing permits was so recent, that there had been no time for anything like a general usage or custom to grow up. Again, there was nothing to show that it was either certain, uniform or reasonable. But a custom, however well established, can never be permitted to prevail so as to make the rights and liabilities of parties other than they are at law. What constituted a delivery of the cotton was a question of law, and the law alone could ascertain the rights of the vendor and vendee, respectively. (Southern Freight and Cott. Pr. Co. vs. Stanard, 44 Mo., 71.)

Defendant offered in evidence the regulations of the treasury department of October 15th, 1862, and contends that no delivery of the cotton could be made till the tax provided for therein had been paid. By the regulations it appears, that by act of congress of July 1st, 1862, a tax was imposed on all cotton which became a lien upon it. The collector was required to collect the tax, and when the tax was paid, he was directed to mark the bales in such manner, as to indicate clearly that the tax had been paid, and then he was to give a permit for the removal of the cotton, which should contain a description of the packages, and a statement, that the tax had been paid. But this regulation did not attempt to prohibit a transfer of the property before the tax was paid. The tax was a lien against the cotton, but the right of the parties as to a sale and delivery remained the same. They may have contracted with reference to that fact, and they were still at liberty to contract in any way they saw proper as to the title, ownership and change of possession of the property.

The motion for a new trial on the ground of newly discovered evidence deserves no consideration. It seems that after the fire, when the contest sprang up in reference to the question who owned the cotton, the portwarden was permitted to sell what remained, and as the money would be coming to the plaintiffs in any event, they gave a receipt for it, in behalf of whom it might concern. There was an agreement between the respective counsel, that this money should be credited on the judgment, if it was in the plaintiffs' favor. A writing to this effect was prepared by defendant's attorney and handed to one of the attorneys representing the plaintiffs, but from some cause or other was overlooked and not signed, or produced upon the trial. When this motion was made and the matter was brought to the attention of the plaintiffs' attorneys, they ascertained the amount received by the plaintiffs, and credited it upon the judgment as they had agreed to do. So, the defendant has had the full benefit of everything he expected to prove by reason of the evidence sought for. There is, therefore, no ground for the motion whatever.

After a full examination of the record, and of all the objections argued here, we are satisfied that there is no error.

Judgment affirmed. Judges Napton and Sherwood concur. Judges Vories and Hough absent.