BENJAMIN F. ENGLAND *et al.*, Respondents, *v.* JOHN MORT-LAND, Appellant.

#### April 10, 1877.

1. To entitle one to recover the contract price of goods alleged to have been sold and delivered, there must, at least, be shown an intention on his part to relinquish all further claim as owner, and an intention on the part of defendant to assume ownership with all its liabilities.

2. Where one sells wood which is in a general pile, not measured, identified, and set apart, but where the vendor merely notifies the vendee that the wood is at the place of delivery, but continues to sell wood from the same general pile to other parties, that is not such a delivery as will enable him to recover the contract price, although the vendee may have taken and paid for a part of the wood.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*J. M. & C. H. Krum*, for appellant, cited:  Clark to use *v.* Cusen, 3 Head, 55 ; Dunlap *v.* Berry, 5 Ill. 327 ; Wilkinson *v.* Holiday, 33 Mich. 386 ; Cunningham *v.* Ashbrook, 20 Mo. 553 ; Bersch *v.* Sander, 37 Mo. 109 ; Ober *v.* Carson, 62 Mo. 209, 213.

*Thos. C. Fletcher*, for respondents, cited:  Morrison *v.* Dingley, 63 Me. 556 ; Riddle *v.* Varnum, 20 Pick. 283 ; Hemming *v.* Powell, 33 Mo. 468 ; Story on Con. 875, sec. 801 ; Gaff *v.* Hoymer, 59 Mo. 345 ; Gaff *v.* Fitch, 58 Ill. 375 ; Bass *et al. v.* Walsh, 39 Mo. 193 ; Hayden *v.* Demits, 53 N. Y. 426 ; Glasgow *v.* Nicholson, 25 Mo. 29 ; Wallace *v.* Breed, 13 East, 525 ; 1 Pars. on Con., 5th ed., 525, 534 ; Williams *v.* Evans, 39 Mo. 204.

HAYDEN, J., delivered the opinion of the court.

This was an action to recover the price of certain wood

claimed by plaintiffs to have been sold and delivered to the defendant. The petition alleged that the plaintiffs, in December, 1873, sold and afterwards delivered to defendant, at Rush Tower, Missouri, 1,000 cords of oak and hickory wood at $3 a cord, and 600 cords of mixed and larger cotton-wood at $2 a cord, making $4,200, which defendant promised to pay; that, of this, $2,502.38 were paid, and that defendant was entitled to a further credit of $1,053.45 for the proceeds of a part of the wood which came into defendant's hands; that $644.17 remained due.

The answer, after specifically denying the allegations as to the sale and delivery, set up a contract by which plaintiffs agreed to deliver to defendant 1,000 cords of oak and hickory wood at $3 a cord, of a specified quality, and sufficiently good to enable defendant to fill a contract which he had, of the terms of which plaintiffs were informed. The answer then admitted that in May and July, 1874, plaintiffs delivered to defendant 834 cords of wood of inferior quality, and not of the kind agreed upon, for which the defendant paid at the contract rate, notifying the plaintiffs he would not receive or pay for the rest. As to the 600 cords of cotton-wood, the answer alleged that the contract was that defendant was not to take it unless he should be able to find a buyer for it at $2 a cord; that after due efforts he could find no buyer at that price, and so notified plaintiffs; that defendant never received or used any of it. The reply put in issue the affirmative matter of the answer.

The testimony of the plaintiffs tended to show that they sold to defendant 1,000 cords of oak and hickory wood at $3 a cord, and 600 cords of mixed and cotton-wood at $2 a cord; that by the contract the wood was to be delivered on the Mississippi River bank, at Rush Tower; that enough oak and hickory wood was placed on the river-bank to cover the contract; and that the defendant took part of the wood and made payments on account of it, and was notified that the rest was on the river-bank; that, as defendant did not take it, the rest of the oak and hickory wood was sold by

plaintiffs to one Welge; that when the contract was made
the defendant was told that the large cotton-wood would be
put on the bank of the slough, and did not object; that if
defendant took rotten wood it was his fault, as there was
plenty of good wood; that defendant agreed to take the
wood unconditionally, and that wood fell in price after the
contract was made. It appeared from the testimony of one
of the plaintiffs that no wood was especially set apart for
the defendant, or on account of this contract; that all the
oak and hickory wood owned by the plaintiffs was placed in
one general pile on the river-bank; that any one who
wanted wood bought and took it from this pile; that steam-
boats landing at this place, or near, took wood from the
pile; that the cotton-wood, amounting to 240 cords, was
piled on the mainland, on the bank of a slough which was
navigable only in high water; that the mixed wood, about
300 cords, was placed about half a mile below Rush Tower.
The plaintiffs exhibited an account corresponding to the
items in their petition. At the close of their case a de-
murrer to the evidence was overruled. There was evidence
for defendant tending to show that when he contracted for
the wood he told plaintiffs he would take their oak and
hickory wood if it was good enough to fill his contract with
Welge, and plaintiffs said the wood would do; that, as to
the mixed and cotton-wood, defendant told plaintiffs he
would take it at $2 a cord if he could find a purchaser, and
declined to give a written contract; that defendant had
tried, without success, to find a buyer. There was other
evidence tending to show a conditional contract. There
was evidence to the effect that the agents of defendant who
went to get the wood found twenty-two and a half cords
of mixed wood so piled that they were forced to take it in
order to get to the oak and hickory wood, and that the
wood taken was of inferior quality.

At the request of the plaintiffs the court gave the follow-
ing instruction:

"If the court, sitting as a jury, find from the evidence

that the defendant contracted with the plaintiffs for the purchase from them of 1,000 cords of oak and hickory wood at $3 per cord, and for 600 cords of large cottonwood and mixed wood at $2 per cord, and to take the same away in the spring and summer of 1874; and if the court find from the evidence that plaintiffs delivered the wood on the bank of the river, that it was the place agreed upon between the parties, and that defendant neglected and failed to take a portion of said wood away in a reasonable length of time, and was notified by plaintiffs to do so, then the plaintiffs had a right to consider the wood as the defendant's, and to sell it to satisfy their lien on it for the price, and are entitled to recover the unpaid balance of the price; and they had a right to consider as the property of the defendant any portion of it not sold by them for his account, and to recover the agreed price which defendant was to pay."

The court found for the plaintiffs in the amount claimed.

The respondents attempt to withdraw this case from the operation of the general rule that where the goods are sold by number, weight, or measure the sale is incomplete, and the risk continues with the seller until the specific property is identified and separated, by urging that, as the appellant was notified that the wood was delivered, and as appellant took a part of it, the contract was perfected by delivery, and the respondents became merely bailees of the wood for appellant. They attempt to bring this case within *Kimberly* v. *Patchin*, 19 N. Y. 330; *Waldron* v. *Chase*, 37 Me. 414; and *Riddle* v. *Varnum*, 20 Pick. 283.

It is not necessary to compare the doctrine of the cases just cited with the law as laid down in *Scudder* v. *Worcester*, 11 Cush. 573, and *Ropes* v. *Lane*, 9 Allen, 502. Where the acts of the vendor himself are inconsistent with a sale and delivery, he certainly cannot claim that the property has been sold and delivered. "The question of the transfer to, and vesting the title in, the purchaser," said the Supreme Court of

this State, in *Ober* v. *Carson*, 62 Mo. 209, " always involves an inquiry into the intention of the contracting parties ; and it is to be ascertained whether their negotiations and acts show an intention on the part of the seller to relinquish all further claim as owner, and on the part of the buyer to assume such control with all liabilities." Here the conduct of the respondents showed that they assumed and exercised ownership over the wood throughout. They sold from the pile to any persons, as they pleased. They allowed steamboatmen and others to take wood from it. According to the respondents' showing, the appellant had no greater right in the wood than any person who by chance wished to buy. To whatever refinement the doctrine of constructive delivery may be pushed, it cannot enable a vendor to assert and deny his ownership over the same property at the same time. In this case it is clear that there was no delivery, and the instruction of the plaintiffs, set out above, is plainly erroneous. Even upon the supposition that there was a delivery, it is not easy to discover upon what theory the court proceeded in holding that the plaintiffs had a right to sell the wood belonging to the defendant.

The following instruction asked by the defendant correctly expressed the law applicable to the case, and should have been given :

" As the plaintiffs sue for the contract price of wood which they allege was sold and actually delivered by them to the defendant, they can recover as to such wood only as the court, sitting as a jury, may find from the evidence they did so deliver. And if the court find from the evidence that the plaintiffs did not set apart, on the river-bank at Rush Tower, 1,000 cords of oak and hickory and 600 cords of mixed and large cotton-wood, for the exclusive use of defendant, but that plaintiffs merely placed a large quantity of wood of various descriptions and quantities in one general pile, and suffered any one who wished to purchase from them to obtain, from time to time, from such general pile, such

wood as he wished to purchase, and exercised acts of owner-ship and control over the entire wood there placed, then the court will find that there has been no delivery in accordance with the terms of the contract sued on, and plaintiffs cannot recover in this action."

In regard to the mixed and cotton-wood, there was evidence tending to show that the contract as to that wood was conditional, and the instruction based on such evidence should have been given. But, as the pleadings stood, the question of delivery was essential, and the plaintiffs' evidence showed there was no delivery.

The judgment of the court below is reversed and the cause remanded. All the judges concur.