AMERICAN METAL COMPANY, Appellant, v. A. A. DAUGHERTY and MINE LaMOTTE LEAD & SMELTING COMPANY.

Division Two, May 14, 1907.

1. **APPELLATE PRACTICE: Action at Law: No Instructions or Exceptions to Evidence: Replevin.** In an action at law, tried by the court without a jury, where no instructions were asked or given, and no exceptions were saved to the admission or rejection of evidence, the appellate court will not weigh the evidence or determine whether or not the finding and judgment of the trial court was correct on the evidence, but if there was substantial evidence to support the judgment it will affirm it. And a suit in replevin is an action at law.

2. **REPLEVIN: Interest and Title.** The plaintiff in an action of replevin must prove a general or special property interest in and a right to immediate possession of the goods replevied. And where the trial court found against plaintiff, and no instructions were asked or given and no exceptions saved to the admission or rejection of evidence, the appellate court will only inquire whether there was substantial evidence to support the finding.

3. ———: ———: **Facts in Evidence.** Plaintiff, by verbal sale, bought of the owner of Mine LaMotte in Madison county, 11,000 pigs of lead, to be delivered in East St. Louis, and the next day confirmed the sale by letter in these words: "This serves to confirm our purchase of you of 11,000 pigs of your lead." There was no evidence that the purchase was of any particular lot of 11,000 pigs of lead, nor that the purchase was of all the lead at the mine, nor that the lead had been collected or segregated and identified in any manner, or that it was even on the mine lands, but it does appear that at the time there were at least 35 more pigs than the number called for by the contract and replevied. *Held*, that a contract for the sale of personal property is purely executory until the property is specifically designated or segregated, and the vendee gets no title until that has been done; and plaintiff having failed to show a specific property interest in the 2,600 pigs at the mine which were not delivered, and the contract calling for a delivery in East St. Louis, a judgment for defendant in plaintiff's suit in replevin will not be disturbed.

4. ———: ———: **Contract of Sale: Appropriation.** The appropriation of specific goods to the fulfillment of a contract of purchase must be made with the express or implied consent of the purchaser, and until this is done the title does not pass to him.

Appeal from Madison Circuit Court.—*Hon. R. A. Anthony*, Judge.

AFFIRMED.

*E. D. Anthony* for appellant.

(1) Delivery is not essential to the transfer of title. The intention may be proven by express declaration or be inferred from the circumstances, and particularly where everything is done besides delivery, including payment of the purchase price. Tiedeman on Sales (1 Ed.), secs. 84, 86; Nance v. Metcalf, 19 Mo App. 183. (2) The subject-matter of the sale was individualized by C. F. Stephen, Leathe's agent, taking the lead and hauling it to the railroad station for shipment, and was the subject of replevin by plaintiff. It was in transit and to all intents and purposes was delivered. (3) The verbal contract of sale and the memorandum confirming the same operated as a complete transfer of title, and such contracts have been upheld by the courts. Smith v. Shell, 82 Mo. 215; Faulconer v. Samples, 57 Mo. App. 302; Armsby Co. v. Eckerly, 42 Mo. App. 299. (4) The lead in controversy had been manufactured and was in transit at the time defendant interfered, and the title had previously passed to plaintiff. Ober v. Carson's Ex., 62 Mo. 209; Goff v. Belche, 62 Mo. 400; McClelland v. Lead Co., 85 Mo. 636. (5) All of the lead sold had been set apart and was kept separate from any other lead in the warehouse at the station, and was a delivery. Rickey v. Zeppenfeldt, 64 Mo. 277.

*Stewart, Eliot, Chaplin & Blayney* and *John C. Brown* for respondents.

(1) Where an action at law is tried by the court sitting as a jury, and no instructions were asked or given, and no exceptions saved to the admission or rejection of evidence, if there is substantial evidence to support the judgment of the court, the action of the trial court will be affirmed. Iron Co. v. Pullis, 42 Mo. App. 206; Bray v. Kremp, 113 Mo. 552; James v. Life Assn., 148 Mo. 15; Rice, Stix & Co. v. McClure & Harper, 74 Mo. App. 383; Gentry v. Templeton, 47 Mo. App. 55. (2) Plaintiff in a replevin suit must prove a general or special property interest in the thing to be replevined and a right to immediate possession. Poe v. Stockton, 39 Mo. App. 550; Broadwater v. Darne, 10 Mo. 277; Gartside v. Nixon, 43 Mo. 138; Wright v. Richmond, 21 Mo. App. 76; McMahill v. Walker, 22 Mo. App. 170; Scott v. Riley, 49 Mo. App. 250; Hinchey v. Koch, 42 Mo. App. 230. (3) A contract to sell chattels which are not specified or designated is purely executory until the chattels are designated or individualized, and the vendee gets no title until this has been done. Ober v. Carson's Ex'r, 62 Mo. 213; England v. Mortland, 3 Mo. App. 490; Freight & Cotton Press Co. v. Stanard, 44 Mo. 83. (4) The title usually vests in the vendee upon delivery to him of the chattels sold; if, however, it be urged that the title vests in the vendee prior to delivery, this cannot be until there has been an appropriation by the vendor of goods to fill the contract. Such appropriation must consist of a setting apart of specific chattels to fill the contract, in such a manner as to show a clear intent on the part of the vendor that the specific chattels shall be used to fill the contract, and in such a way that the vendor cannot later change his mind. Tiedeman on Sales, sec. 89; Ober v. Carson's Ex'r, 62 Mo. 209;

Groff v. Belche, 62 Mo. 400; England v. Mortland, 3 Mo.
App. 490. (5) If the terms of the contract are that
the vendor shall pay the freight or undertake to make
the delivery at another point than the place of ship-
ment, then the place of delivery is at the point desig-
nated, and no title vests in the vendee until the goods
have been delivered to the vendee at the designated
point. Benjamin on Sales (7 Am. Ed.), sec. 363; Nich-
olson v. Golden, 27 Mo. App. 132; Thomas v. Ramsey,
47 Mo. App. 84.

GANTT, J.—Plaintiff brought this action of re-
plevin against the defendants, for two thousand six
hundred pigs of lead weighing about eighty pounds
each, of the alleged value of $9,360, in the circuit court
of Madison county, and obtained possession of the said
property and sold the same.

The defendants in their answer admitted posses-
sion of the property at the commencement of the suit,
but denied all the other allegations of the petition, and
for further and special defense, defendants allege that
the plaintiff was not the real party in interest, but that
the suit was instituted and was being prosecuted under
a contract and understanding between one S. H.
Leathe and the plaintiff, whereby the property in con-
troversy, or the proceeds thereof, were to be paid or
had been paid to the said Leathe. Defendants further
answering allege that the personal property described
in the petition belonged to the Mine LaMotte Lead &
Smelting Company, at the institution of the suit, and
is still owned by said company, and that defendant A.
A. Daugherty is only interested in said personal prop-
erty as a stockholder, officer and agent of said last-men-
tioned company, and that the property at the institu-
tion of the suit, and now is, of the market value of
twenty thousand dollars, and defendants demanded a

return to them of all of said personal property and for all other and proper relief.

For reply, plaintiff contends that the Mine La-Motte Lead & Smelting Company had no title or interest in the property replevined.

The cause was tried without a jury and the circuit court gave judgment for the defendants, and found that the property in controversy, to-wit, 2,598 pigs of lead, had been delivered to the plaintiff under the order of delivery made in the cause and that the market value thereof was $8,781.24, and that the same had been sold and disposed of by the plaintiff and was not at the date of the judgment in its possession and thereupon the court adjudged that the defendants recover from plaintiff and its securities C. F. Stephens, S. H. Leathe and E. D. Anthony, $8,781.23, the market value of the lead in controversy, and that execution issue therefor. Motions for a new trial and in arrest were filed and overruled and an appeal taken to this court. Objections were filed in due time by the respondents to the abstract of record filed by appellant herein. The objections to this abstract were well taken, but as the respondents, without waiting for the action of this court thereon, supplied the defects in appellant's abstract by a full additional abstract, it will, in our opinion, be more satisfactory to dispose of the cause on the record as it appears from the two abstracts.

1. This is an action at law, and no instructions were requested or given and no exceptions were saved to the admission or rejection of evidence, and in such cases, it has been repeatedly ruled by this court that it will not weigh the evidence and determine whether or not the finding and judgment of the circuit court was correct on the evidence, but if there is substantial evidence to support the judgment of the circuit court, its judgment will be affirmed. [Miller v. Breneke, 83

Mo. 163, and cases cited; Bray v. Kremp, 113 Mo. 552; James v. Life Association, 148 Mo. 1. c. 15.]

2. The facts as we glean them from the abstracts are these: On the 14th of February, 1903, the plaintiff, the American Metal Company, through its agent, Sol Roos, in the city of St. Louis, purchased of Samuel Leathe eleven thousand pigs of lead at $3.97½ cents per hundred pounds, f. o. b., at East St. Louis, less one-half per cent commission spot cash, by verbal sale, and on the next day confirmed the said purchase by a letter in writing. At that time Samuel H. Leathe was the owner of what was known as the "Mine LaMotte" properties in Madison county, Missouri, and on February 18, 1903, Mr. Leathe sold the Mine LaMotte properties to the firm of Daugherty and Albers of New York, but held possession of it under a contract, which provided that until the purchase money for said property had been paid by said Daugherty and Albers, the said Leathe should remain in full possession and carry on the business therewith and therein and receive all income therefrom. On March 6, 1903, the purchase money having all been paid, Leathe surrendered the property to Daugherty and Albers.

On behalf of the plaintiff, C. F. Stephens testified that for six years prior to the 6th of April, 1903, he had lived in Madison county, and was the manager of the Mine LaMotte estate for Samuel H. Leathe, the owner at that time; that witness was present when Mr. Leathe sold the eleven thousand pigs of lead to the American Metal Company, and that under the instructions of Mr. Leathe, witness caused to be delivered to the American Metal Company in East St. Louis, eight thousand four hundred pigs of lead as fast as he could obtain cars therefor, and that he had the remaining two thousand six hundred pigs placed in the warehouse of the Mine LaMotte property, and that the reason he had not shipped out this two thousand six hundred pigs was be-

cause he was forbidden to do so by Mr. Daugherty; that
the warehouse where this lead was stored at Mine La-
Motte station, belonged to the Mine LaMotte estate,
being part of the property that once belonged to S. H.
Leathe, and sold to the Mine LaMotte Lead & Smelting
Company; that the transfer of the property between
Leathe and Daugherty and Albers was completed on
the 6th of March, 1903, and that most of the loading
of the eight thousand four hundred pigs was done sub-
sequent to that date; that before the transfer, witness
had been shipping some of the lead; that the railroad
company was behind with the cars, which witness had
ordered in the middle of February, and he did not get
the cars until the first of March, and the first ship-
ment was made the day before the transfer of the prop-
erty; that but for the delay in receiving cars all the
lead would have been loaded and shipped in the month
of February; that these shipments were made to the
American Metal Company, East St. Louis, care of the
Clover Leaf Railroad Company; that payments for this
lead were made directly to Mr. Leathe; that after
March 6, when Mr. Daugherty took charge of the prop-
erties, some fifteen or twenty shipments were made of
this lead, and that Mr. Daugherty had made no objec-
tion until the last shipment to his, witness's knowl-
edge, and that Mr. Daugherty knew of the sale and its
confirmation of the eleven thousand pigs before he took
charge of Mine LaMotte. Concerning the two thou-
sand six hundred pigs of lead in dispute in this action,
it appears that the lead when manufactured is first
located at the refinery; that thereafter the lead is haul-
ed by teams to the warehouse; that this warehouse holds
from seven thousand three hundred to seven thousand
four hundred pigs. In answer to the court's question,
"When was the two thousand six hundred lot of pigs
placed in the warehouse at Mine LaMotte?" the wit-
ness, Mr. Stephens, answered that there was only way

he could explain; that the warehouse holds about seventy-three or four hundred pigs, and that witness tried to haul and keep it full as fast as he shipped out. As fast as witness loaded the cars, the remainder of the lead was hauled over from the refinery to the warehouse. This was all in March, 1903. The two thousand six hundred lot was placed there sometime during the month of March. In fulfillment of the contract between Leathe and the American Metal Company, the first bill of lading was shipped out on the 5th of March; on the 6th of March, the property had been surrendered to Daugherty and Albers and all of the eight thousand four hundred pigs except the first shipment was shipped out after Daugherty and Albers had taken possession of the Mine LaMotte properties under their purchase from Leathe. When Daugherty stopped the shipments, he put a padlock on the warehouse, which at that time contained two thousand five hundred and ninety-eight pigs in one pile and thirty-five in another. Matters were in this situation when this replevin was commenced.

The agent of the plaintiff, Mr. Loeb, testified that he was notified by Mr. Leathe that a certain amount of lead had been locked up in the metal house at Mine LaMotte, and that Leathe could not finish the delivery of the eleven thousand pigs, to-wit, the two thousand six hundred pigs, a portion of which the plaintiff had paid for; that thereupon Mr. Leathe suggested to witness to institute a replevin, and thereupon the plaintiff instituted this suit upon the following guarantee:

"The American Metal Company, plaintiff, v. A. A. Daugherty and the Mine LaMotte Lead & Smelting Company, defendants. In the circuit court of Madison county, Missouri, September term, 1903. The undersigned Samuel H. Leathe hereby requests the

above-named plaintiff to institute this action of replevin for the two thousand six hundred pigs of lead described in the petition herein and in consideration that said plaintiff will institute and prosecute this action, he the undersigned herewith undertakes, promises and agrees to pay all the expenses of the prosecution of said case and to hold the plaintiff entirely free and harmless from all damages or loss on account of said suit. Samuel H. Leathe, St. Louis, April 1, 1903. Witness, George W. Lubke.''

And since the institution of this suit, the American Metal Company has not done anything in respect to the suit. Whatever has been done on behalf of the plaintiff, has been done by someone else.

On the part of the defendant, Mr. Daugherty testified that between February 4th and March 6, 1903, the contract for the sale of the land in controversy was not shown to him, and that he saw it for the first time during the week of the trial in the circuit court; that he never approved or ratified that sale by shipments of any ore; that he did not go into the warehouse and point out to the deputy sheriff the lead which the sheriff had levied on, or called the sheriff's attention to what lead he should take; that he was not aware of the number of pigs in the warehouse until the sheriff told him; that the lead at the time when and the place where it was replevined was worth $4.22½ cents per hundred pounds; that he was familiar with the custom of the commission men who handled such products, and that he did not make any payments before the lead was shipped; that they only made payments as against bills of lading on lead; that he had never authorized Mr. Stephens to make any shipments of lead, nor gave him or Mr. Leathe any directions about shipping in February, and that he did make objections to Mr. Stephens about the shipments about the time of the transfer of the Mine La-Motte property before the last shipment.

Mr. Stephens testified that he was in St. Louis on the 2nd day of March, 1903, and met both Mr. Daugherty and Mr. Leathe in Mr. Leathe's office; that Mr. Leathe informed Mr. Daugherty that he had sold all the lead he had had on hand there at Mine LaMotte, about eleven thousand pigs, and at the same time took out of his desk the letter of confirmation of the sale to plaintiff and showed it to Mr. Daugherty, and this was before the final payment by and delivery to Mr. Daugherty.

As already said, the plaintiff requested no instructions and the court gave none and therefore this court cannot say upon what theory of the law and finding of facts the court gave its judgment save and except that the court made a finding that plaintiff had no title to the property in controversy and that the defendants were at the institution of this suit and now are entitled to the possession of said property as against plaintiff. Upon this state of facts the plaintiff insists that this was a sale of specific goods without condition by Leathe to plaintiff and the title passed immediately and without further acts of the parties.

It is the settled law of this State that the plaintiff in an action of replevin must prove a general or special property interest in and a right to immediate possession of the goods replevined, and therefore, before the plaintiff in this case was entitled to judgment, it was bound to show a general or special property and a right to the immediate possession of the two thousand six hundred pigs of lead replevined. The circuit court found against plaintiff on this point, and we are only to inquire whether there was any substantial evidence justifying the court in so doing. Mr. Leathe, who made the sale to the plaintiff of the eleven thousand pigs of lead, did not testify, but the deposition of Mr. Roos, the agent of the plaintiff, was taken. It nowhere appears in Roos's testimony that this is a pur-

chase of any particular lot of eleven thousand pigs of lead, nor of all the lead on hand at Mine LaMotte, nor that the lead had been collected together or identified in any manner. The memorandum of purchase by Roos to Leathe is as follows: "This serves to confirm our purchase of you of eleven thousand pigs of your lead." These words cannot be construed as being a purchase of any specific lot of lead, but simply of eleven thousand pigs of Leathe's lead, and it does appear that at the time of that sale there were on hand at least thirty-five more pigs, and how these thirty-five pigs came to be separated from the balance, nowhere appears. There was no evidence indicating on what part of the Mine LaMotte property the eleven thousand pigs of lead were located at the time of the sale. Indeed, there is no evidence that any mention was made by Leathe or Roos of Mine LaMotte in their transaction, nor that it was in any sense a condition of the trade that the lead which Leathe was to furnish was to come from the Mine LaMotte. All that the plaintiff was interested in was that the lead should be delivered, f. o. b., East St. Louis. A contract to sell personal property which is not specific or designated is purely executory until the property is designated or segregated and the vendee gets no title until this has been done. The plaintiff relies upon the proposition that the subject-matter of the sale was individualized by Mr. C. F. Stephens, Leathe's agent, taking the lead and hauling it to the railroad station for shipment, and that it was a subject of replevin. It was also said in his counsel's brief that it was in transit and to all intents and purposes delivered. The record, in our opinion, does not bear out this contention of counsel. This lead was never delivered to the railroad station, and pigs were hauled to the warehouse located on the Mine LaMotte property and belonged to it. There is no basis in the evi-

204 Sup—6

dence for asserting a delivery of the lead to the railroad; the warehouse was the property of the Mine LaMotte Lead & Smelting Company, and not the warehouse of the railroad, neither can it be said that it was in transit.

Ober v. Carson's Ex., 62 Mo. 209, is cited by plaintiff in support of its contention. In that case, plaintiff sold 101 bales of cotton and later 36 bales to the defendant, defendant examined the cotton and rejected two bales, which were rolled aside, and defendant accepted the remainder.. Plaintiffs directed the weighers to deliver the cotton and told defendant to haul it off, which he was doing when the cotton burned. In that case there was a sale of a certain number of bales of cotton not specified, but the vendor appropriated cotton to fill the sale, and the vendee in accepting it was hauling it away when it was destroyed. In this case there was no appropriation of a specific lot of lead and no delivery to the vendee nor to a common carrier for the vendee, nor was the delivery at the place called for in a memorandum of the sale. Clearly the two cases are so dissimilar in their facts that the decision in Ober v. Carson's Ex., supra, cannot be said to support the plaintiff's claim in this case.

Plaintiff also cites Groff v. Belche, 62 Mo. 400, but in that case there was a sale of oats in stacks, which the vendor was to thrash and measure and deliver to the purchaser, who was to furnish sacks; the vendor did thrash and measure the oats and fill all the sacks, which the purchaser furnished, and stored the balance, and this court held that that was such a delivery of the property as to pass the title. There the vendor had done all that the contract of sale required at his hand; not so, however, in this case; here the vendor has not even delivered the lead to a common carrier to be transported to the place of delivery, to-wit, East St. Louis, and it cannot be said that the vendor had relin-

quished all further claim as owner, or that the buyer had assumed control of the lead with all the liabilities of the owner.

There is nothing in McClelland v. Picher Lead & Zinc Co., 85 Mo. 636, that has any bearing upon the issues in this case.

It is also said by counsel for plaintiff that all of the lead sold had been set apart and kept separate from all other lead at the station, and was a delivery, but counsel overlooks the written memorandum of the contract which required the lead to be delivered not in defendant's warehouse at Mine LaMotte, but on board the cars in East St. Louis. But aside from all of this discussion, after the delivery of the Mine LaMotte property to Daugherty and Albers by Mr. Leathe, Mr. Leathe had no right to go upon the property and appropriate lead to fulfill an unexpired contract of lead made while he was in the possession; he may or may not have the right to adjust with Daugherty and Albers in the Mine LaMotte property and appropriate the lead thereon to the fulfillment of his contract with plaintiff. But we think that the judgment of the circuit court could well have been based upon the finding that there had been no sufficient appropriation of the two thousand six hundred pigs replevined in this action to the contract with plaintiff, because there is absolutely no evidence that plaintiff had ever assented to any such appropriation. Up to March 28, 1903, the plaintiff never was informed that any pigs of lead had been put in the warehouse and appropriated to it under the contract of sale; it was not until Mr. Stephens told Mr. Leathe after March 28, that Daugherty had nailed up the warehouse and Mr. Leathe had visited the plaintiff's agent at St. Louis and told him of Daugherty's act that plaintiff knew anything of the lead replevined. And plaintiff only made this claim to this specific lead to accommodate Mr. Leathe who guaranteed plaintiff

against all costs and damages arising from the suit. It is stated by Tiedeman on Sales, section 89, that the appropriation of specific goods to the fulfillment of a contract must be made with the express or implied consent of the purchaser, and until this is done, the title does not pass, and this is the doctrine of Ober v. Carson's Ex., 62 Mo. 209, and Groff v. Belche, 62 Mo. 400.

For the purposes of this appeal this court must assume that the trial court believed the evidence offered by the defendants. Upon a careful consideration of the testimony, we are of opinion that there was sufficient evidence to justify the circuit court in finding that the title to the property had never passed to the plaintiff, and that it had no right to maintain replevin for the possession thereof as against defendant, and accordingly the judgment of the circuit court is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.