JAMES LYLE, Appellant, *v.* WILLIAM A. SHINNEBARGER, Respondent.

### March 23, 1885.

1. SALE OF PERSONAL PROPERTY—NEBRASKA STATUTE OF FRAUDS APPLICABLE TO CASE IN JUDGMENT.— The statute of frauds in Nebraska, as introduced in evidence, is as follows : "Every contract for the sale of any goods, chattels, or other things in action, shall be *void*, unless : *first*, a note or memorandum of such contract be made in writing and be subscribed by the party to be charged therewith ; or, *second*, unless the buyer shall accept and

receive part of such goods, or the evidences, or some of them, of such things in action; or, *third,* unless the buyer shall, *at the time,* pay some part of the *purchase money.*" It appearing by the evidence that the property in this case was neither delivered or accepted, and no *memorandum* of the contract was made *in writing; held* that there was not a legal sale under the Nebraska statute, and under our own statutes (substantially the same as in Nebraska) there must be both an acceptance and receipt of the property.

2. MONEY PAID UNDER MISTAKE OF FACT—WHEN RECOVERABLE.— If money is paid under the impression of the truth of a fact which is untrue, it may, generally speaking, be recovered back, however careless the party paying had been in omitting to use due diligence to inquire into the facts. The imputation of negligence would not bar the plaintiff's action.

APPEAL from Nodaway Circuit Court, HON. H. S. KELLY, Judge.

*Reversed and remanded.*

The facts sufficiently appear in the opinion of the court.

S. R. BEECH and WILLIAM C. ELLISON for the appellant.

I. The first instruction, as qualified by the court, does not correctly state the law. A mistake of fact, though negligently or carelessly made, does not prevent a recovery; and even though the party has possession of the means of discovering the mistake, or once knew the facts but has forgotten them, he may recover.—*Koontz* v. *Central National Bank,* 51 Mo. 275; *Fraker* v. *Little,* 24 Kan. 598; *Devine* v. *Edwards,* 87 Ill. 177; *Stanley, Rule & Co* v. *Brielsy,* 45 Conn. 464; *Llewellen* v. *Garrett,* 58 Ind. 442; *School Directors* v. *Boomhorn,* 83 Ill. 17.

II. A further qualification of said instructions is erroneous, viz: "If the plaintiff supposed that by the laws of Nebraska, delivery and acceptance were not necessary, he is bound by his act in paying the money, although such acts are necessary to a valid sale in that state." The true principle is that if the law mistaken is the law of a foreign state, the mistake is regarded as one of fact.—*Haven* v. *Fostu,* 9 Pick. 111; Kerr on Fraud and Mistake (Bump's ed.), 402.

III.   The third instruction, as qualified, is against the current of authority.

IV.   The first and second instructions for defendant have no evidence for their support.

No brief on file for respondent.

Opinion by ELLISON, J.

This suit was begun before a magistrate in Nodaway county to recover from respondent sixty dollars claimed to have been paid to him through a mistake of facts.

The circumstances under which the money was paid were as follows: The son of appellant, sometime during the summer of 1879, went to York county, Nebraska, leaving on his father's farm in Nodaway county, Missouri, a growing crop of corn and a new cultivator plow. He made himself a home in Nebraska, and, while residing there, met with respondent, who was then a resident farmer of the neighborhood. After some time had elapsed, respondent, who also had been a resident of Nodaway county, returned and seeing appellant, asked him if his son John had a field of corn on his place. Appellant answered that he had. Respondent then told him that before he left Nebraska, he had seen his son John and had made a trade with him; that he had sold to John a twenty-acre field of corn in Nebraska, at three dollars per acre; and that John had agreed to let him have his pay out of the proceeds of the sale of his corn on his father's farm, in Nodaway county. Appellant relying solely upon these representations, and without further or other information in respect to the transaction, said that he would rather hold his son's corn for a better price than corn was then bringing, and that he would pay respondent the cash and "take his son for it." The offer to pay cash was accepted by respondent, and appellant paid him accordingly.

In a short time appellant learned that respondent and his son were disputing as to whether there had been any such trade made between them, the former claiming and the latter denying that there had been. However that

may be, appellant's son positively refused to accept the Nebraska corn, denied that he had ever agreed to, and refused to approve his father's act in paying the $60 on his account. At the institution of this suit the corn still remains in the field as it was when respondent left it. Appellant demanded back the $60 of respondent, claiming that when he paid it he supposed he was accommodating him, and especially his son. Respondent refused to refund, whereupon this suit was instituted.

The court gave for appellant the following instructions:

1. "If the jury believe from the evidence that, at the time the money in controversy was paid to defendant, the parties did not understand each other; that the plaintiff thought he was paying it on account of corn that defendant was to gather for him, and defendant thought he was receiving it on account of a sale of corn he had made to the plaintiff's son in Nebraska, then their minds did not meet in the transaction, and you should find for the plaintiff. *That is to say, if the plaintiff and defendant did not come to an agreement or understanding of the terms of the contract between them, by which the money was paid to defendant, and that without any fault or negligence of the plaintiff, he paid the money through a mistake of the facts, and he took steps to have the matter set aright within a reasonable time after discovering the misunderstanding, the jury should find for the plaintiff; but if the facts were correctly represented to the plaintiff, and he paid the money under an agreement between him and defendant had on the faith of such representation of the facts, the plaintiff cannot recover the money back, although he may not have understood the legal effect of the transaction.*

2. "The court instructs the jury that, if one person, through a mistake of facts, pays money to another, which he does not owe, it is the duty of the other to refund the money on demand; if therefore, the jury believe from the evidence, that defendant represented to plaintiff, that he had sold to his son corn in Nebraska,

standing in the field; and that, believing there had been a binding sale on the faith of such representation, plaintiff paid him $60, saying, 'he would take his son for it;' and if they further find from the evidence that, plaintiff's son never had taken possession of the corn, and had never paid any money or other valuable thing to defendant therefor, and that there had been no writing of any kind between defendant and plaintiff's son, affirming or recognizing such sale, they will find for the plaintiff. *Provided, they further find that plaintiff's son refused to take said corn, and denied the validity of said contract between him and defendant for the sale of said corn.*

3. "The court instructs the jury that mere words will not constitute a delivery of personal property; whatever the language of the contract may be, there must be some act of the parties, operating *and intended to operate* as a transfer of possession and an acceptance by the buyer; if the jury believe from the evidence that anything remained to be done between the defendant and John Lyle in Nebraska, *as contemplated by the contract*, in the way of separating a specific quantity sold from a large field in which the corn in evidence was standing with other corn, *in order to the delivery thereof*, then there was no delivery of the corn."

The italics in each of the above instructions are what was added to them as originally asked by appellant, and to this addition or modification exceptions were duly saved.

For respondent the court gave the following instructions, to the giving of which appellant excepted at the time:

1. "If the jury believe from the evidence that defendant sold to John Lyle, who they may believe from the evidence is the son of James Lyle, the plaintiff, twenty acres of corn standing in a field in the state of Nebraska for three dollars per acre, and that he had pointed and showed said John Lyle where said corn was, and that an exchange of plows and the payment of the difference of

value was a part and parcel of said contract, then no further or other delivery of said corn was necessary to complete and make binding said contract for the sale of said corn.

2. " If the jury believe from the evidence that defendant had twenty acres of corn standing in the field; that he bargained and sold said corn to the son of the plaintiff who lived near said corn, in the state of Nebraska, for the price of sixty dollars; that defendant was to have certain corn in Nodaway county in payment of said corn in Nebraska, and that at the time of said sale said corn was pointed out and shown to plaintiff's son, and he was directed to, and did agree to take said corn in the field and gather it, and defendant left said corn in his care, this was sufficient delivery of the corn to constitute a valid contract in law; provided, the jury believe from the evidence that the corn in its then condition was not capable of a more specific delivery and no other or further delivery was contemplated by the parties at the time.

3. " If the jury believe from the evidence that James Lyle, the plaintiff, voluntarily paid the defendant the sum of sixty dollars for his son, John Lyle, in discharge of the contract of said son, for the purchase of the defendant's corn in Nebraska, with a view of holding John Lyle's corn in Nodaway county until the price of corn would increase, then the jury will find for the defendant, and it makes no difference that John Lyle may have written to the defendant that he would go back on the contract after the payment of the money."

On trial plaintiff introduced in evidence section 9 of the Nebraska statute of frauds as follows:

Sect. 9. Every contract for the sale of any goods, chattels, or other things in action, for the price of $50 or more, shall be *void*, unless, first, a note or memorandum of such contract be made in writing, and be subscribed by the party to be charged thereby; or,

*Second*, unless the buyer shall accept and receive part of such goods or the evidences, or some of them, of such things in action; or,

*Third*, unless the buyer shall, *at the time*, pay some part of the *purchase money*.

We cannot gather from the evidence on the part of defendant, respondent here, from his own chief examination, exactly how that trade in Nebraska was consummated.   He says he told John Lyle he would not trade the corn unless he traded plows, and seems to intimate that he sold John the twenty acres of corn *and* the plow for twenty acres of John's corn in this state and his plow; that is, it was one single sale.   Yet, it is plain from the whole examination in chief that defendant has not aimed to make himself clearly understood in regard to that sale.   It looks as though he really knew the facts to be one way, but would prefer to so fashion his statement that it might be taken in another.   Reading the cross-examination we think it is clear that the plow trade and the corn trade should each stand on its own bottom. Defendant states that he remembers to have sworn on a former occasion that Lyle had paid him nothing whatever on the corn; and then adds, "our plow transaction was a separate affair from the corn trade."

Referring now only to the corn trade, he states, "John Lyle and I were at the gate on his home premises when we made the trade I have spoken of.   The twenty acres of corn referred to was in a field about a mile away from John's home.   The twenty acres of corn which I sold him was not fenced at all; it was in a sixty-acre field, all except the twenty acres which belonged to ———.   I had often talked to John about selling him the corn at different times before I did sell it to him.   I never delivered him the possession of the corn the day I sold it; but about a week before we were riding by the field and I pointed it out to him.   John and I did not mark off the corn and separate it from the other corn in the field.   It was not necessary to do so to identify it.   John never took actual possession of the corn that I know of.   I came away and left it to him to get when he wanted it. We never entered into any writing in reference to the corn."

We are of the opinion that this does not show that there was a legal sale under the statute of Nebraska. There is no evidence that John Lyle ever did more than pass by the field in which it, with forty acres more, was growing. There was nothing to indicate that this field belonged to different owners, or to show where the ownership of one began and the other left off. Nothing was done to identify it. It was not marked off, separated, or located. At the time of the sale the parties were a mile away. No possessory acts were done.

This is not like the case of *Ober* v. *Carson* (62 Mo. 209), which was a sale of thirty-six bales of cotton that were inspected and handled by the vendee and some inferior bales rolled out of his lot. To hold the statute complied with under the evidence presented would be a contradiction of its terms.

We are not unmindful that in considering sales of this sort, regard must be had to the situation and kind of property. Of course all personal property cannot be taken in hand and passed from one to another. Immature growing crops may be sold and possession delivered although, as said by Cockburn, C. J., "in a popular and practical sense, growing crops are no more capable of removal than the land itself." Yet there must be something done by the parties to show an acceptance and receipt. Under the Nebraska statute introduced in evidence, plaintiff's son must have both accepted and received the corn. These words are not to be taken as so synonymous in character that they may be used interchangeably. Our own statute of frauds and perjuries is substantially the same as the Nebraska statute, and it is the ruling in our court that there must be both an acceptance and receipt of the property.—*Harvey* v. *St. Louis Butchers, &c., Ass'n*, 39 Mo. 212. "An acceptance ascertains the identity and quality of the goods sold, and the receiving of them changes the possession. Mere words are not enough for the purpose; there must be some unequivocal acts of acceptance and actual receipt of the property."

Browne on the statute of frauds and perjury gives a like construction to such statutes.

If the sale of the corn and the plow was one sale, one transaction, and not "separate affairs," and plaintiff's son did "accept and receive" the plow, this would be a sufficient compliance with the statute, and an instruction embodying that idea fully and clearly expressed would be correct. There is no evidence preserved in the record tending to show "that at the time of said sale said corn was pointed out and shown to plaintiff's said son," and for this reason no such hypothesis should have been put to the jury, as is in defendant's second instruction. Defendant himself testified that at the time of sale they were a mile away from where the corn was growing, and that the only time he ever showed it to him was about a week before the sale, "we were riding by the field and I pointed it out to him."

As to the other branch of the case, we think that whether the money was paid "without any fault or negligence of plaintiff," or through his negligence, if it was "through a mistake of facts," makes no difference and does not alter the legal relation of the parties.—*Koontz* v. *Central National Bank,* 51 Mo. 275. In the case cited, it appears that Mrs. Koontz and Mrs. Simpson were each engaged in the millinery business in the town of Boonville; and that each were customers of Tuttle, a wholesale dealer in St. Louis, who frequently drew drafts on each of them for their respective bills as these would fall due, collecting the drafts through his bank in St. Louis, which sent them to its correspondent in Boonville, the Central National Bank. The latter bank on receiving a draft for one hundred dollars, drawn on Mrs. Simpson, by mistake presented it to Mrs. Koontz, who under the impression she was owing Tuttle, took up the draft; and on the same day the bank remitted the money to the St. Louis bank. At this time, 7th of July, both these women were solvent. No notice was given by Mrs. Koontz of the mistake, till December following, after the money had been remitted and Mrs. Simpson had become

insolvent. Yet under these facts it was held in that case that Mrs. Koontz could recover from the Boonville Bank. The court, Wagner, J., says: "If the money is paid under the impression of the truth of a fact which is untrue it may, generally speaking, be recovered back, however careless the party paying had been in omitting to use due diligence to inquire into the facts. The imputation of negligence would not bar the plaintiff's action." Again the court says: "It is apparent that the parties acted under a mistake of the facts, and that both were mutually in error, and if in consequence of such mutual mistake, one party has received the property of the other, he must refund, and this without reference to vigilance or negligence."

It will be seen from this decision that there was a mutual mistake, but in the case before us, according to plaintiff's theory, the mistake was on the part of himself, while defendant knew he was misleading. In the case cited both parties were innocent, while here the defendant being culpable (under plaintiff's theory) makes this a much stronger case for a just application of the doctrine.

So in the case of *Fraker* v. *Little* (24 Kan. 598), where notes had been altered so that they were void, an accommodation maker who negligently paid it, but supposing without examination he was liable, the court held he could recover and that negligence was no bar.

In *Divine* v. *Edwards* (87 Ill. 177) an instruction was given by the trial court in nearly the same language as to negligence and diligence as was added to appellant's first instruction. The court in speaking of it says: "We cannot give our sanction to the rule announced in that instruction." And in answering the suggestion of appellee in that case, that having omitted vigilance, appellant could not complain, the court says: "This is not the law. It does not lie in his mouth to complain that appellant did not watch him with the care which the circumstances seemed to demand."

If a party once has knowledge of the real fact, but at

the time of transaction it slips his mind and the matter is consummated under mistake he can recover back.—*Lewellen* v. *Garrett*, 58 Ind. 442 ; *Kelly* v. *Solari*, 9 M. & W. 54. In the latter case Lord Abinger, C. B., said : "There is a third case and a most difficult one, when a party once had a full knowledge of the facts, but has since forgotten them. I certainly laid down the rule too widely to the jury when I told them that if the directors once knew the facts they must be taken still to know them, and could not recover by saying that they had since forgotten them. I think that knowledge of the facts which disentitles the party from recovering must mean a knowledge existing in the mind at the time of payment."

And even though it should be conceded that defendant was innocent in his representation to plaintiff of the transaction with his son, he would still not be entitled to retain the money. The question whether he understood the matter as he represented it to be is not involved. But how was the fact?—*School Directors* v. *Boomhorn*, 83 Ill. 17.

If in the latter part of the instruction No. 1 for appellant, the court meant to say that ignorance of the law of Nebraska as the effect of a sale there of personal property would not avail plaintiff, it was erroneous.

If plaintiff made the payment under a knowledge of what took place regarding the sale between defendant and plaintiff's son, under the erroneous belief that such a transaction was a valid and binding sale under the laws of Nebraska; in other words, if he mistook the laws of Nebraska, he would still be permitted to recover. The familiar maxim, *Ignorantia juris non excusat*, does not apply to a foreign law, and in this respect laws of the different states are foreign laws.—*Haven* v. *Foster*, 9 Pick. 111. When one misunderstands or mistakes a foreign law, it is considered *Ignorantia facti excusat*.

The instructions not being in accordance with the views herein expressed, the judgment is reversed and the cause remanded. The other judges concur.