JOHN J. YEATER ET AL., Respondents, v. VINCENT K. HINES, Appellant.

Kansas City Court of Appeals, February 8, 1887.

1. ACTION — PLEADING — MONEY HAD AND RECEIVED UNDER MISTAKE OF FACT — CASE ADJUDGED. — Where the action is for money had and received (as in this case) by the defendant, for the use of the plaintiffs, on an implied promise on the part of defendant to pay

said money to plaintiffs, founded on the payment thereof by the plaintiffs to defendant under a mistake of fact : the *further* allegations in the petition that plaintiffs were *induced* to pay the money by the false representations made by defendant, which he knew to be false, did not change the cause of action from one *in assumpsit* for money had and received to one *ex delicto* for fraud and deceit. The latter allegations are unnecessary, but the action nevertheless is for the recovery of a specified sum paid under a mistake of fact. Payment of money under a mistake of fact may be generally recovered back, if the mistake is caused and induced by the party to whom the payment is made, the right to recover is not changed, except to be made stronger.

**2.** CONTRACT — MISREPRESENTATION IN MAKING — RESCISSION. — A contract, assented to by one party on the faith of material misrepresentations by the other party, will be rescinded at the option of the party injured, although the misrepresentations were made neither fraudulently nor negligently. But until rescission the contract is binding. (In this case there was no rescission of the contract).

APPEAL from Saline Circuit Court, HON. JOHN P. STROTHER, Judge.

*Reversed.*

Statement of case by the court.

This was an action for money had and received.

It was alleged, in substance, in the petition that the plaintiffs were partners, engaged in the buying and shipping of live stock, and that, as such partners, they bought of one Reynolds a certain lot of cattle in the year 1880 ; that, before receiving the cattle, the defendant represented to plaintiffs that he held three notes against Reynolds for the various amounts named, and that they were all secured by chattel mortgages on the cattle purchased of Reynolds, whereas, in truth, as the defendant well knew, he had no mortgage on said cattle, or any part of them, and that, notwithstanding such knowledge the defendant demanded payment of plaintiffs of the three notes before he would permit the plaintiffs to move or ship the cattle ; that plaintiffs, believing the representations made by the defendant, and

relying thereon, and being deceived thereby, paid to the defendant the sum of twelve hundred and ten dollars on December 22, 1880, the amount claimed by defendant to be a lien on the cattle; that the price agreed upon with Reynolds for the cattle was $7,468.20, and that in payments made by plaintiffs prior to the payment aforesaid to defendant, and in payments of valid liens on said cattle, made after said payment, plaintiffs paid, and were compelled to pay, exclusive of the sum paid to the defendant, more than the value and contract price of said cattle; that defendant had no mortgages or liens on said cattle, as claimed by him, "and by reason of said deceit practiced upon plaintiffs the defendant procured from them the said sum of $1210.20, which he now holds to their use and benefit, and for which, with interest from December 22, 1880, they ask judgment."

The jury, under the instructions of the court and the evidence, found a verdict for the plaintiffs in the sum sued for, and from a judgment accordingly entered, the defendant has appealed to this court.

Under our view of the law of this case the judgment must be reversed, and that, too, upon the assumption that the facts are as claimed by the plaintiffs. Hence, in the statement of the facts now to be made, we shall state the facts most favorably to the plaintiffs, and as they are claimed by them to be.

As alleged in the petition, the plaintiffs purchased a lot of cattle from one Reynolds, in December, 1880. Reynolds, at the time of the sale, stated that he was induced to accept a former offer made by the plaintiffs and refused by him, by reason of the fact that he owed the defendant money, which the defendant needed, and for the payment of which the defendant was pushing him. The sale was completed, and it may be conceded, although it may not be a fact, that the plaintiffs had paid something on the purchase, when one of the plaintiffs proceeded to interview the defendant on the subject of his claim against Reynolds. The testimony of that

plaintiff concerning the interview and the transaction that took place between him and the defendant is as follows : "I hunted him up and asked him if he had a lien on the cattle. He said he did, but could not tell how much. He went to Chapman's office and got the papers. Hines said he did not have the mortgages there, but he would send for them, and I got the notes and supposed the mortgages covered the cattle. Did not think anything else, just took his word for it. I believed the statement that he had liens on the cattle and relied on that. Would not have paid the money if I had not. *I disremember whether I got the mortgages there, right then, or not, but I got the notes.* The mortgage for the $150 note, I don't remember that I ever got. That was about all that was said. It was late in the evening. I went to Bass & Kelley's store, in Windsor, and Mr. Hines soon came to me and said he had discovered that he had a mortgage which covered a stag that was in the feed lot. I told him I would pay him what the stag was worth, and paid him $25 for it, and I asked him if that was all the liens he had now on the cattle, and he said it was. I paid Hines $1,210 on the mortgages." On cross-examination, the said plaintiff testified in relation to said subject as follows : "I took the notes and chattel mortgages so we could have them settled with Reynolds. The reason I did not surrender those notes to Reynolds was because *he had not paid them* to us. The cattle did not come to that much. We still hold them against Reynolds. They never have been surrendered to Reynolds. I did not ask to have the assignments endorsed on the notes and mortgages. Chapman wrote it on them. What I wanted was the notes."

The plaintiffs introduced the said notes and mortgages in evidence. Upon each an assignment by the defendant to the plaintiffs without recourse was endorsed. It may be assumed that said mortgages did not include the whole or any part of the lot of cattle purchased by the plaintiffs of Reynolds. It may be also

assumed that, as alleged in the petition, the sum paid by plaintiffs to Reynolds prior to the transaction with the defendant, and the sums paid by them after that transaction, in satisfying valid liens on said cattle, amounted to more than the contract price of the cattle. And it may be further assumed that, as the jury found under an instruction submitting that question to them, the plaintiffs did not pay the amount of the notes held by defendant to defendant, in pursuance of the terms of the sale of the cattle by Reynolds to them.

M. A. FYKE, for the appellant.

I.   The court erred in admitting in evidence the mortgages given to the bank.

II.   The court erred in permitting the plaintiffs to answer the following question : "Did you have any claim against Reynolds for corn ? " It was not claimed that plaintiffs had any lien on the cattle for their debt, or that defendant had any knowledge of the existence of such debt. No ground was laid in the petition for such testimony.

III.   The court erred in sustaining plaintiffs' objection to the following question propounded on cross-examination to the plaintiffs : "Did you get all of the property which was described in the various mortgages paid off by you ? " And in refusing to allow defendant to show that plaintiffs, after they received the fat cattle, also received all the property described in the mortgages paid off by them, consisting of cows, calves, hogs, horses, etc., of the value of over a thousand dollars. If plaintiffs in fact paid said debts and took the property included in the mortgages, in addition to the fat cattle of the value of one thousand dollars or more, and sold the same and retained the proceeds, their loss or damage would be reduced by that amount.

IV.   The court erred in overruling defendant's demurrer to the evidence. There was no evidence showing or tending to show that defendant's mortgage did not

cover part of the cattle. Plaintiffs did not pretend to know the brands of the cattle they bought or received. There was no evidence showing, or tending to show, that Hines knew, or had reason to believe, that his mortgages did not cover the cattle. The evidence of the plaintiffs showed that, before paying the money to Hines, they had examined the cattle and had better opportunities to know whether or not the Hines mortgages covered the cattle than defendant. *Dormitzer et al. v. Green*, 3 Mo. App. 593 ; *Merchants' National Bank v. Sales*, 3 Mo. App. 85 ; *Leversing v. Schnell*, 8 Mo. App. 580 ; *Joliffe v. Collins*, 21 Mo. 338 ; *Anderson v. McPike*, 86 Mo. 293 ; *Arthur v. Wheeler & Wilson Machine Co.*, 12 Mo. App. 335 ; *Franklin v. Hall*, 7 Mo. App. 241 ; *Cagney v. Cusan*, 77 Ind. 494.

V. The court erred in giving plaintiffs' instructions. Before the plaintiffs can recover, they must show : That defendant represented that his mortgages covered the cattle ; that such representation was not true, and that defendant knew it was not true, or that, not knowing whether it was true or false, he made it as of his own knowledge, for the purpose of deceiving plaintiffs and inducing them to pay his notes, and that by such representations plaintiffs were deceived and induced to pay defendant's claim, and that they sustained damage. The gist of this action is fraud. The instruction given for plaintiffs authorizes a recovery, even though defendant was honestly mistaken and honestly believed that his mortgages covered the cattle ; such is not the law." "There must be fraud as distinguished from mere mistakes." *Dulaney v. Rogers et al.*, 64 Mo. 201 ; *Dunn v. Oldham, Adm'r*, 53 Mo. 181 ; *Merchants' National Bank v. Sells*, 3 Mo. App. 85 ; *Parker v. Farquis*, 64 Mo. 28 ; *Joliffe v. Collins*, 21 Mo. 338 ; *Anderson v. McPike, supra ;* *Peers v. Dennis Adams*, 29 Mo. 184 ; *Levering v. Schnell*, 8 Mo. App. 589 ; *Walsh v. Morse*, 80 Mo. 568 ; *Caldwell v. Henry*, 76 Mo. 254.

VI. The court erred in overruling motion for new trial and in arrest of judgment.

GEO. P. B. JACKSON, for the respondents.

I. The petition was sufficient, and the objection to the introduction of any evidence was properly overruled. *Koontz v. Cent. Nat'l Bank*, 51 Mo. 275, and cas. cit. ; *Menefee v. Arnold*, 55 Mo. 368 ; *Harris v. Board of Education*, 3 Mo. App. 570 ; *Magoffin v. Muldrew*, 12 Mo. 512 ; *Columbus Ins. Co. v. Walsh*, 18 Mo. 229 ; *3d National Bank v. Allen*, 59 Mo. 310 ; *McDonald v. Lynch*, 59 Mo. 350 ; *Matthews v. Kansas City*, 80 Mo. 231–235.

II. The defendant, after filing only a general denial, could not be permitted to introduce evidence of new matter, in defence of which plaintiffs had no notice, and which they were entirely unprepared to meet. The ruling of the court was more favorable to the defendant than the law warrants. *Northup v. Insurance Co.*, 47 Mo. 435 ; *Kersey v. Garten*, 77 Mo. 645 ; *Newham v. Kenton*, 79 Mo. 382.

III. The demurrer to the evidence was properly overruled. The evidence clearly showed that the defendant's mortgages did not cover the cattle purchased by plaintiffs. If it does not appear that defendant did not actually know that his mortgages were not on those cattle, it is at least certain that he was claiming that they were, when he was conscious that he was without such actual knowledge ; but it is immaterial whether he knew or not. There is no evidence that plaintiffs had examined the cattle, with a view of ascertaining the existence of any encumbrances, but if they had done so, that will not relieve defendant, for the plaintiffs were mistaken about the lien of defendant's mortgages, and having paid money under that mistake, they can recover it back. *Koontz v. Cent. National Bank, supra; Waite v. Leg-*

*gett*, 8 Cow. 195 ; *Kingston Bank v. Ettinge*, 40 N. Y. 391.

IV.    The testimony of Beedy concerning the number and amount of his mortgages was not objected to on the trial, and cannot be here.    *Wayne Co. v. Railroad*, 66 Mo. 77 ; *Johnson et al. v. Railroad*, 22 Mo. App. 597 ; *State v. West*, 21 Mo. App. 309 ; *Walker v. Owen*, 79 Mo. 563–568.

V.    There was no error in the giving or refusing of instructions.

Hall, J.—The defendant's counsel argues that this is an action for fraud and deceit, and that the trial court erred in not trying the case on that theory.    In this position the counsel, in our opinion, is not correct.    The petition lays no damages.    The plaintiffs seek to recover no damages.    This action is for money had and received by the defendant for the use of the plaintiffs on an implied promise on the part of the defendant to pay said money to plaintiffs, founded on the payment thereof by plaintiffs to defendant under a mistake of fact, viz.: The belief that defendant had a lien on plaintiffs' cattle to the amount of said sum, when, in fact, the defendant had no such lien whatever, to any amount.    Payment of money, under a mistake of fact, may be, generally, recovered back ; if the mistake is caused and induced by the party to whom the payment is made, the right to recover is not changed, except to be made stronger.    *Lyle v. Shinnebaryer*, 17 Mo. App. 75.    The cause of action remains the same.    The allegations in the petition, to the effect that the plaintiffs were induced to pay the money by the false representations made by defendant, which he knew to be false, did not change the cause of action from one *in assumpsit* for money had and received, to one *ex delicto*, for fraud and deceit.    The allegations were unnecessary, but the action, nevertheless, was for the recovery of a specified sum paid under a mistake of fact.

The first question, therefore, is, did the facts establish the cause of action as alleged in the petition?

What was the real transaction between the plaintiffs and defendant, under the facts as stated and assumed by us?

The motives, on account of which a transaction is had, cannot be alone considered in determining the character or the effect of the transaction. In this case it may be true that the plaintiffs paid the amount of money in suit to extinguish a lien claimed by defendant on their cattle, and for this purpose only, and that they did not consider, or care at all for the assignment of the notes (claimed to be secured by the lien on the cattle) by the defendant to them; but we cannot view the transaction as if the defendant had not assigned the notes to plaintiffs, because the assignment was in fact made. Although it may be that the plaintiffs would have paid the money without the assignment of the notes to them, the transaction cannot be viewed as if the assignment had not been made. The transaction must be viewed as it is, not as it might have been. Whatever effect the assignment is entitled to must be given to it, because it was a part of the transaction.

Viewed thus we see that, although the acting motive, the moving cause, on account of which the plaintiffs paid the money to the defendant was the payment of the supposed lien on the cattle, another consideration was, in fact, given by the defendant therefor, viz., the assignment of the notes. Such assignment was a consideration, because the notes in the hands of the plaintiffs remained subsisting notes against Reynolds, the maker thereof. This is true, because, as the jury found, the plaintiffs, under their contract of purchase from Reynolds, did not have to pay said notes. Had, however, the plaintiffs paid the notes under their contract with Reynolds, of course, they would have had no cause of action against the defendant on that account. The payment made by plaintiffs did not pay off, or satisfy, the

notes. Such payment cannot be considered as a payment of money under a mistake of fact, but, on the contrary, must be considered as the payment of the purchase price of the said notes bought by plaintiffs. In other words, it is not true that there was no contract between plaintiffs and defendant, on account of which the payment was made. There was a contract between said parties.

We shall treat the allegations of the petition as sufficient to embrace the facts as they are. The plaintiffs were induced by the misrepresentations made by the defendant, to the effect that the notes were secured by chattel mortgages on the cattle purchased by them, to buy the said notes, and to take an assignment of them without recourse.

Upon the discovery that the said mortgages did not cover the cattle, the plaintiffs could have rescinded the contract by tendering to the defendant, in a reasonable time thereafter, the notes and mortgages assigned by him to them, and then they could have maintained an action *in assumpsit* against the defendant for the money paid by them ; and this, although the defendant had made the misrepresentations in good faith, believing them to be true. The rule on this subject is thus stated by Mr. Wharton : "A contract assented to by one party, on the faith of material misrepresentations by the other party, will be rescinded at the option of the party injured, although the misrepresentations were made neither fraudulently nor negligently." 1 Wharton on Contracts, sect. 214, and the cases and authorities cited. The injured party, however, need not rescind the contract. Until rescinded, the contract is binding. In this case there was no rescission of the contract. The plaintiffs retained the notes and mortgages up to the time of the trial, without ever having tendered them to the defendant. In the words of one of the plaintiffs, they still held them against Reynolds at the time of the trial. In this case the plaintiffs had no right to retain

the notes purchased by them, and to a return of the money paid by them for the notes. Under the facts of this case, as stated by the plaintiffs, the judgment should have been for the defendant.

Had the misrepresentations been made fraudulently by the defendant, and the plaintiffs had been induced thereby to purchase the notes, upon a discovery of the fraud the plaintiffs could have rescinded the contract and maintained an action for money had and received, or they could have affirmed the contract, and maintained an action *ex delicto*, *i. e.*, for the damages sustained by them by reason of the fraud. In the latter action it would, of course, have been necessary to prove the fraud.

But, as we have said, this action is for money had and received, and, under the facts of this case, is not maintainable, for the reason that the plaintiffs did not rescind the contract.

The judgment is reversed. Ellison, J., concurs; Philips, P. J., concurs in the result.