Bradbury, J.
The plaintiff in error brought an action before a justice of the peace to recover of the defendant in error damages alleged to have been sustained on account of the refusal of the latter to perform a contract by which he had sold to the plaintiff in error certain growing timber:
The defendant attempted to secure the dismissal of the action on the ground that the justice had no jurisdiction of an action for the breach of such a contract. Failing in this, and the action being tried to a jury, he requested the justice to instruct the jury “that if they find from the evi *59 dence that the trees about which this action is brought -were at the time of said alleged contract then growing upon the land of defendant, and that no note or contract or memorandum was made of the contract of sale was at the time made in writing the plaintiff cannot maintain this action, and y^our verdict should be for the defendant”; which instruction the justice refused to give, but on the contrary gave to them the following instructions on the subject: “This is an action for damage, not on the contract nor to enforce the same, and if y^ou find that a contract- was made verbal or otherwise and the defendant refused or failed to comply^ w-ith its terms the plaintiff is entitled to any damage you may find him to have sustained by way of such noncompliance.”
The defendant in error, wdio was also the defendant in the justice’s court, excepted, both, to the charge as given and to the refusal to charge as requested; the verdict and judgment being against him he embodied the charge as given, as well as that refused, in separate bills of exceptions, and brought the cause to the court of common pleas on error, where the judgment of the justice of 'the peace w"as affirmed; he thereupon brought error to the circuit court, where the judgments of the court of common pleas and that of the justice were both reversed, and it is to reverse this judgment of the circuit court and re-instate and affirm those of the court of common pleas and justice of the peace that this proceeding is pending.
Counsel for plaintiff in error contends that the record contains nothing to show that the trees which were the subject of the contract w’ere standing or growing, and that, therefore, it does not appear that the defendant was injured by the instructions given and refused. The record does not support this contention. During the trial three separate bills of exceptions w'ere taken, and when all of them are considered together, it clearly appears that evidence w'as given tending to prove that the trees, the subject of the contract, w*ere growing on the land at the time it was made, and that the contract w^as not evidenced by any note or memorandum in writing. The instruction refused, was, *60 therefore, pertinent, and if it contained a sound legal proposition the refusal to give it in charge to the jury was prejudicial to the defendant. The court however not only refused to give the instructions requested by the defendant, but told the jury in substance that no written memorandum was necessary.
Great doubt exists in the minds of many eminent jurists whether, in this state, a justice of the peace is bound to instruct a jur}'1 at all; the code of civil procedure specifically imposes this duty upon the courts of common pleas (sec. 5190, Rev. Stat.), but is silent upon the subject as respects justices of the peace, unless by sec. 6705, Revised Statutes, the provisions of the code of civil procedure, respecting the duties of courts of common pleas in this particular, are made applicable to justices’ courts, which admits of grave doubts. The courts of last resort, in the states of Iowa and Nebraska, have held that a justice of the peace has no authority to instruct the jury on the trial of an action in his court. St. Joseph Manf. Co. v. Harrington, 53 Iowa, 380; Ives v. Norris, 13 Neb., 252. And it has been held in New York that the jury were the judges of the law as well as of the facts. McNeil v. Scoffield 3, Johns. 436; Trustees v. Thorne, 6 Hill, 326. The Supreme Court of Georgia holds that “The law does not require a justice of the peace to charge the jury at all, and it would seem best that he should not do so; but if he undertakes to instruct1 them, he must do so correctly.” * * Bendheim Bro hers & Co. v. Baldwin, 73 Ga., 594; Adams et al. v. Clark, 64 Ga., 648.
In Delaney v. Nagle, 16 Barb. (N. Y.) 96, the justice of the peace had been requested to give to the jury a pertinent and correct proposition of law; this he refused, saying: “that the jury had heard all the testimony and the arguments of counsel, and were the judges of the law and the evidence, and that the court had nothing more to say to them and would leave the matter for their consideration.” On appeal, the Supreme Court saj-: “The justice in this case, left the whole matter to the jury, law as well as fact. He did not, as the appellant’s counsel supposes, by implication, charge the converse of the defendant’s propositions. *61 They were left unfettered, to decide both the law and the fact. We cannot say that they have decided wrong.”
There is strong ground to contend, in reason as well as upon authority, that a justice of the peace may deny a request to give in charge to a jury a sound and pertinent legal proposition; no such duty is specifically enjoined on him by any statute of this state; nor is he clothed with power to enforce his instructions by granting a new trial should the3T be disregarded by the jury. Neither does he usually possess legal knowledge superior to that of the jurors who he is requested to instruct.
. The opposite doctrine, however, is not without eminent authority in its favor. Judge Swan, in his valuable treatise for the guidance of justices of the peace, lays down the rule that a justice is bound to give to the jury proper instructions when so requested. Swan’s Treatise 183, 189. And the same view is taken by Judge Boynton in Kaufman v. Broughton, 31 Ohio St., 430. No authority, however, is cited by either of these eminent jurists in support of the proposition advanced by them, nor do either discuss it on principle, but seem to have taken it to be conceded as matter of course. The direct question has not heretofore been considered by this court, nor does it necessarily arise in the case under consideration; for the justice in this case did not merely decline to give an instruction which he had been requested to give, and then submit the evidence to the jury without any instructions whatever, but he actually gave them in charge a proposition substantially the converse of that which was requested. The highest courts of the states of Iowa and Nebraska hold that an instruction given by a justice of the peace to a jury is a mere nullity that they will not review. St. Joseph Manf. Co. v. Harrington, 53 Iowa, 380; Ives v. Norris, 13 Neb., 252. On the other hand, the doctrine in New York and Georgia is that, while a justice is not bound to instruct a jury, yet, if he does so, it must be done correctly. Bendheim Brothers Co. v. Baldwin, 73 Ga., 594; Adams et al. v. Clark, 64 Ga., 648; Delancy v. Nagle 16 Barb. (N. Y.), 96; Trustees v. Thorne, 6 Hill 326. The latter rule, we think, is the better one. Without *62 passing upon the question of the duty of a justice of the peace, to give to the jury a sound and pertinent legal proposition when he is so requested, we hold that, if he does instruct them, whether pursuant to a request or not, he is bound to lay down the law correctly; for a jury are quite likely to respect the official character of the justice and be influenced by the instructions that he may give to them under the sanction of his office.
Whether a sale of growing trees, is the sale of an interest in or concerning land has long been a much controverted subject in the courts of England as well as in the courts of the several states of the Union. The question has been differently decided in different jurisdictions, and by different courts, or at different times by the same court within the same jurisdiction. The courts of England, particularly, have varied widely in their holdings on the subject.
Lord Mansfieed held that the sale of a crop of growing turnips was within this clause of the statute. Emmerson v. Heelis, 2 Taunt. 38, following the case of Waddington et al v. Bristow, et al. etc., 2 Bos. & Pul. 452, where the sale of a crop of growing hops was adjudged not to have been a sale of goods and chattels merely. And in Crosby v. Wads-worth, 6 East 601, the sale of growing grass was held to be a contract for the sale of an interest in or concerning land, Lord EelENBorough saying: “Upon the first of these questions” (whether this purchase of the growing crop be a contract or sale of lands, tenements or hereditaments, ©r any interest in or concerning them), “I think that the agreement stated, conferring, as it professes to do, an exclusive right to the vesture of the land during a limited time and for given purposes, is a contract or sale of an interest in, or at least, an interest concerning lands.” Id. 610.
Afterwards, in Teal v. Auty, 2 B. & B. 99, the court of common pleas held a contract for the sale of growing poles was a sale of an interest in or concerning lands. Many decisions have been announced b}r the English courts since the cases above noted were decided, the tender^ of which have been to greatly narrow the application of the fourth section of the Statute of Frauds to crops, or timber, grow *63 ing upon land. Crops planted and raised annually by the hand of man are practically withdrawn from its operation, while the sale of other crops, and in some instances growing timber, also, are withdrawn from the statute, where, in the contemplation of the contracting parties, the subject of the contract is to be treated as a chattel. The latest declaration of the English courts upon this question, is that of the common pleas division of the high court of justice, in Marshall v. Green, 1 C. P. Div. 35, decided in 1875. The sjdlabus reads: “A sale of growing timber to be taken away as soon as possible b3'- the purchaser is not a contract or sale of land, or an3>- interest therein, within the fourth section of the Statute of Frauds.” This decision was rendered b3r the three justices who constituted the common pleas division of the high court of justice, Coeeridge, C. J., Brett and Grove, JJ., whose characters and attainments entitle it to great weight; yet, in view of the prior long period of unsettled professional and judicial opinion in England upon the question, that the court was not one of final resort, and that the decision has encountered adverse criticism from high author^7 (Benjamin on Sales, section 126, Ed. of 1892), it cannot be considered as finally settling the law of England on this subject.
The conflict among the American cases on the subject cannot be wholly reconciled. In Massachusetts, Maine, Mar3dand, -Kentucky and Connecticut, sales of growing trees to be presently cut and removed’b3r the vendee, are held not to be within the operation of the fourth section of the Statute of Frauds. Claflin et al. v. Carpenter, 4 Metc. (Mass.) 580; Nettleton v. Sikes, 8 Metc. (Mass.) 34; Bostwick v. Leach, 3 Day. (Conn.) 476; Erskine v. Plummer, 7 Me. 447; Cutler v. Pope, 13 Me., 377; Cain v. McGuire, etc., 13 B. Mon., 340; Byassee v. Reese, 4 Metc. (Ky.) 372; Smith v. Bryan, 5 Md. 141. In none of these cases except 4 Met. (Ky.) 373, and in 13 B. Mon. 340, had the vendor attempted to repudiate the contract, before the vendee had entered upon its execution, and the statement of facts in those two cases do not speak clearly upon this point. In the leading English case before cited, Marshall v. Green, 1 C. P. Div., *64 35, the vendee had also entered upon the work of felling the trees and had sold some of their tops before the vendor countermanded the sale. These cases, therefore, cannot be regarded as directly holding that a vendee, by parol, of growing timber to be presently felled and removed, may not repudiate the contract before anything is done under it; and this was the situation in which the parties to the case now under consideration stood when the contract was repudiated. Indeed, a late case in Massachusetts, Giles v. Simonds, 15 Gray, 441, holds that, “The owner of land, who has made a verbal contract for the sale of standing wood to be cut and severed from the freehold by the purchaser may at any time revoke the license which he thereby gives to the purchaser to enter on his land to cut and carry away the wood, so far as it relates to any wood not cut at the time of the revocation.”
The courts of most of the American states, however, that have considered the question, hold, expressly, that a sale of growing or standing timber is a contract concerning an interest in lands, and within the fourth section of the Statute of Frauds. Green v. Armstrong, 1 Denio, 550; Bishop v. Bishop, 1 Kernan, 123; Westbrook v. Eager, 1 Harr. (N. J.) 81; Buck v. Pickwell, 27 Vt. 157; Cool v. Box & Lumber Co., 87 Ind., 531; Terrell v. Frazier, 79 Ind., 473; Owens v. Lewis, 46 Ind., 488; Armstrong v. Lawson, 73 Ind. 498; Jackson v. Evans, 44 Mich., 510; Lyle v. Shinnebarger, 17 Mo. App., 66; Howe v. Batchelder, 49 N. H. 204; Putney v. Day, 6 N. H., 430; Bowers v. Bowers, 95 Pa. St., 477; Daniels v. Bailey, 43 Wis., 566; Lillie v. Dunbar, 62 Wis., 198; Knox v. Haralson, 2 Tenn. Ch., 232.
The question is now', for the first time, before this court for determination; and we are at liberty to adopt that rule on the subject, most conformable to sound reason. In all its other relations to the affairs of men, growing timber is regarded as an integral part of the land upon which it stands; it is not subject to levy and sale upon execution, as chattel property; it descends with the land to the heir, and passes to the vendor with the soil. Jones v. Timmons, 21 Ohio St., 596. Coal, petroleum, building-stone, and many *65 other substances constituting integral parts of the land, have become articles of commerce, and easily detached and removed, and, when detached and removed, become personal property, as well as fallen timber; but no case is found in which it is suggested that sales of such substances, with a view to their immediate removal, would not be within the statute. Sales of growing timber are as likely to become the subjects of fraud and perjury, as are the other integral parts of the laud, and the question whether such sale is a sale of an interests in or concerning lands, should depend, not upon the intention of the parties, but upon the legal character of the subject of the contract, which, in the case of growing timber, is that of realty.
This rule has the additional merit of being clear, simple and of easy application, qualities entitled to substantial weight in choosing between conflicting principles.
Whether circumstances of part performance might require a modification of this rule, is not before the court and has not been considered.

Judgment affirmed.